Estate of ROSITA CALIBUSO by its Administrator, FLORENCIO FERNANDEZ CALIBUSO, FLORENCIO FERNANDEZ CALIBUSO, Individually, and SILVESTRE CALIBUSO, Individually, and as Next Friend of THELMA SYLVIA CALIBUSO, JEFFREY ELDRED CALIBUSO, CLIFFORD DICK CALIBUSO, and SILVESTRE CLAY CALIBUSO, Plaintiffs-Appellees, *v.* PACIFIC INSURANCE COMPANY, LIMITED, a Hawaii corporation, Defendant-Appellant, and Estate of LEONILA B. CABATU, Deceased, by its Executor RODRIGO BRIONES, BENJAMIN CABATU, RUDOLFO CABATU, EDWARD CABATU, by his legal Guardian RUDOLFO CABATU, Estate of FE BUNCAYAO PASCUA, Deceased, by its Administrator, VALENTIN PASCUA, VALENTIN PASCUA, Individually, TEOFILA BUNCAYAO, PURITE BUNCAYAO, Estate of ESPANITA M. TABLADILLO, Deceased, by its Administratrix, MAGDALENA B. LABASAN, TYR MENDOZA, by his Guardian Ad Litem, MAGDALENA B. LABASAN, Intervenors-Appellees

NO. 6649

SEPTEMBER 8, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA. J.

We are again called upon to determine the limits of an insurer's liability under an uninsured motorist endorsement of a single multi-vehicle policy of automobile liability insurance, a question we believed to have been settled by *Allstate Insurance Company v. Morgan*, 59 Haw. 44, 575 P.2d 477 (1978) and *American Insurance Company v. Takahashi*, 59 Haw. 59, 575 P.2d 881 (1978). Appellant insurer, however, asserts the unjust consequences of an application of the rule adopted in *Morgan* and *Takahashi* to the calamitous accident involved in this case demonstrate its questionable wisdom and efficacy. Hence, we are urged to modify the rule to accommodate a fairer result, particularly for appellant insurer and the policyholder, which allegedly would be consonant with provisions of the insurance policy. We have considered appellant insurer's arguments and reviewed our prior decisions but are impelled by applicable provisions of both the statute and the insurance policy, as well as the reasons underlying earlier decisions. to affirm the circuit court's holding.

I.

On November 3, 1973, an automobile operated by Rosita Calibuso collided with another motor vehicle driven by an uninsured motorist. The collision caused the deaths of Mrs.

Calibuso and three other persons, Leonila B. Cabatu, Fe Buncayao Pascua, and Espanita M. Tabladillo, who were passengers in Mrs. Calibuso's vehicle. The ill-fated automobile was covered by a single multi-vehicle liability policy, with an uninsured motorist endorsement, issued to Mrs. Calibuso and her husband Silvestre Calibuso by Pacific Insurance Company; Mr. and Mrs. Calibuso were then the owners of two other vehicles.

The premiums for the policy included small sums[1] to defray the possible costs of protecting each person "insured"[2] under the policy against the contingency of sustaining injury or death through the negligent operation of a motor vehicle by an impecunious uninsured motorist.[3] The limits of insurer liability under the endorsement were $10,000 per person and $20,000 per accident.

On March 18, 1975, the Estate of Rosita Calibuso and her survivors filed an action in the Circuit Court of the Second Circuit seeking a declaration on the scope of Pacific Insurance Company's liability under the endorsement in question. The estates and survivors of the fatally injured passengers

---

[1] The record indicates that premiums for the uninsured motorist endorsement covering the three vehicles amounted to $4.00, $3.00, and $3.00, respectively.

[2] The term "insured" is defined by the policy for relevant purposes in the following manner:

  (1) the named insured as stated in the policy (herein also referred to as the "principal named insured") and any person designated as named insured in the schedule and, while residents of the same household, the spouse of any such named insured and relatives of either;

  (2) any other person while occupying an insured automobile; and

  (3) any person, with respect to damages he is entitled to recover because of bodily injury to which this endorsement applies sustained by an insured under (1) or (2) above.

[3] The insurer's liability under the uninsured motorist endorsement is stated, in pertinent part, as follows:

  The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile. . . .

subsequently joined in the declaratory action. On May 10, 1977, the circuit court held that the insurer's total liability was the product of the policy's stated liability limits multiplied by the number of vehicles covered thereby.[4] In effect, the ruling anticipated our holding in *Morgan* and *Takahashi* that HRS §§ 431-448 and 287-7 mandated a minimum of $10,000 in protection for each "insured" up to an overall minimum limit of $20,000 per accident on each vehicle covered by an uninsured motorist endorsement to a multi-vehicle liability policy and that the foregoing amounts may be aggregated or "stacked," if necessary. The appeal here was perfected before the foregoing decisions issued from this Court.

While it registered a strong disagreement with *Morgan* and *Takahashi* during oral argument, Pacific's primary thesis was that our broad "stacking" rule resulted in injustice for the policyholder and his family and required reexamination. It contended that only the policyholder and his family should be permitted to recover "stacked" benefits because they were the intended primary beneficiaries of the policy and that the recovery of other "insured" should be subject to the limits applicable to the vehicle in which injury or death occurred. The argument is not devoid of logic; it also evokes much sympathy. The suggested application would probably result in a total recovery of $25,000 by the estate and survivors of Mrs. Calibuso, a named insured, and a recovery of $5,000 by each of the other families. An application of *Morgan* and

---

[4] The relevant portion of the court's order reads as follows:

IT IS FURTHER ORDERED that there is no just reason for delay in the entry of a final judgment on the issues adjudicated by this Order, and, accordingly, a final judgment is hereby entered in favor of plaintiffs and intervenors, and against defendant, establishing that, for the accident of November 3, 1973, defendant must provide uninsured motorist coverage to plaintiffs and intervenors in the amount of $30,000.00 per person and $60,000.00 per accident.

The circuit court was not asked to prorate or allocate the recoverable sums among the insured and the question of the extent of each insured person's recovery is not before us. Thus, the sole issue presented on appeal is whether Pacific must provide uninsured motorist coverage in a sum of $60,000 or in a lesser amount.

*Takahashi* to this case would probably result in a recovery of $15,000 by each of the families, including the Calibusos. However, for reasons stated in *Palisbo v. Hawaiian Insurance & Guaranty Co.*, 57 Haw. 10, 547 P.2d 1350 (1976), and *Walton v. State Farm Mutual Automobile Insurance Co.*, 55 Haw. 326, 518 P.2d 1399 (1974), as well as those stated in *Morgan* and *Takahashi*, we reject the suggestion to modify our earlier decisions.

## II.

An uninsured motorist endorsement is subject to the requirements of HRS §§ 431-448[5] and 287-7.[6] We first considered the relationship between the relevant insurance policy provision and the foregoing statutory provisions in *Walton v. State Farm Automobile Insurance Co.*, *supra*, where a passenger in a vehicle was injured as the result of the negligence of the uninsured driver of another. The passenger sought recovery under both the uninsured motorist endorsement of

---

[5] HRS § 431-448 provides:

Automobile Liability; coverage for damage by uninsured motor vehicle. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness. or disease, including death, resulting therefrom, provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.

[6] HRS § 287-7 states the minimum statutory limits of liability as follows:

[E]very such [automobile liability] policy . . . is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one person in any one accident and. subject to such limit for one person, to a limit of not less than $20,000 because of bodily injury to or death of two or more persons in any one accident, . . . .

his own policy and a similar endorsement of his host driver's policy. A specific clause, commonly referred to as an "other insurance" clause, in both policies precluded such recovery. any sums received under any insurance policy serving to limit or bar further recovery. We voided the clause pursuant to HRS § 431-448 to the extent that it served to prevent a full recovery of actual damages and recovery under both was approved so long as the total amount recovered did not exceed the actual damages suffered. The broad purpose of HRS § 431-448 "to promote protection . . . for persons who are injured by uninsured motorists . . . ," in our opinion, mandated the foregoing decision. 55 Haw. at 331, 518 P.2d at 1402.

*Palisbo v. Hawaiian Insurance & Guaranty Co., supra,* involved a one-car accident where the host driver was the adjudged tortfeasor. The victims of his negligence sought recovery under the uninsured motorist endorsements of their own policies because the host driver's insurance coverage was insufficient to compensate them for their damages. The issue before us was whether an "underinsured" driver was an "uninsured" driver within the meaning of HRS § 431-448. In answering the question in the affirmative we said:

The statute under consideration must be liberally construed in accordance with its remedial purposes and consistent with the legislative intent. Accordingly, we hold that where the tortfeasor's automobile liability insurance is inadequate to provide compensation to the injured policyholder of an uninsured motorist policy, for at least the minimum amounts specified by the financial responsibility law, the tortfeasor is, as to that policyholder, "uninsured" to the extent of the insufficiency for the purposes of the statute. *Porter v. Empire Fire and Marine Insurance Company, supra; Hanlon v. Buckeye Union Insurance Co.,* 73 Ohio Op. 2d 267, 324 N.E.2d 598 (C.P. 1975). A contrary finding would tend to subvert the statutory scheme designed to protect innocent victims of the financially irresponsible driver, and render the uninsured motorist statute in these cases ineffective.

57 Haw. at 15-16, 547 P.2d at 1354. Thus, in *Walton* and *Palisbo* we were guided by a specific legislative intent to protect innocent victims of financially irresponsible drivers and applied § 431-448 to best effectuate such purpose.

*Walton* and *Palisbo* set the stage for our decision in *Allstate Insurance Company v. Morgan, supra*. Lindarae Morgan sustained injuries while operating a friend's vehicle that collided with another vehicle being driven by an uninsured driver. Allstate sought a declaration of its liability limits for uninsured motorist coverage under a policy issued to Donald Morgan, her father. The circuit court ruled against the insurance company and it appealed to this court. The factual situation was one "in which three automobiles were insured under a single liability policy, but the insured was injured while operating a fourth, independently owned and insured motor vehicle which was struck by an uninsured motorist." 59 Haw. at 45, 575 P.2d at 478. Our holding was:

> [T]hat Lindarae Morgan was entitled to potentially recover the statutorily provided minimum of uninsured motorist insurance for all three of the automobiles insured under her father's policy. To elaborate, Lindarae Morgan was protected under HRS § 431-448 to the extent of $10,000 in per person uninsured motorist insurance for each vehicle insured under the policy. Since three vehicles were insured under the policy, three separate coverages of $10,000 were available to her. As we have stated, this coverage was available to her *regardless* of whether or not she was injured while in one of the insured vehicles. Consequently, Lindarae Morgan is entitled to recover the combined total of $30,000 in uninsured motorist insurance benefits from Allstate.

*Id.* at 49, 575 P.2d at 480.

*American Insurance Company v. Takahashi, supra,* followed shortly thereafter and similar questions produced similar answers. However, we were also compelled there to determine the validity of a "limits of liability" clause in the pertinent policy because the circuit court had found it validly limited American's uninsured motorist liability to a maximum of $20,000, the "per accident" limitation specified by the

policy.[7] We found this "wholly inconsistent" with *Morgan* and as two vehicles were covered by the policy, ruled that the insured were "entitled to recover the statutorily provided coverage of $20,000 for each of the vehicles insured under the policy, or a combined total recovery of $40,000." 59 Haw. at 64, 575 P.2d at 884. The decision further stated:

> [T]hat the limits of liability clause in the policy before us is invalid insofar as it attempts to defeat the statutory requirements of HRS § 431-448. American cannot reduce its liability for uninsured motorist coverage below the statutorily required minimum amounts for each insured vehicle. *See Walton v. State Farm Mutual Automobile Insurance Co.*, 55 Haw. 326, 518 P.2d 1399 (1974). Therefore, the limitation of uninsured motorist coverage to a maximum of $20,000 "regardless" of the number of automobiles to which the policy applies is null and void.

*Id.* That statutorily mandated coverage could not be diminished by insurance policy provisions was the governing principle.

### III.

Pacific asserts "stacking" should operate in a manner that will enhance recovery by the "real" intended beneficiaries of uninsured coverage, i.e., the policyholder and his immediate family. It proposes an alteration of our rule on aggregation of coverage so the Calibusos would probably recover $25,000, rather than the $15,000 that appears to be in store for them under *Morgan* and *Takahashi*. It would have

---

[7] The limits of liability clause in *Takahashi* provided in pertinent part as follows:

Regardless of the number of . . . (4) automobiles or trailers to which this policy applies,

. . . . .

(C) the limit for Uninsured Motorists Coverage stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as the result of any one accident.

the court draw a distinction between classes of "insured" to favor relatives of the policyholder residing in his household over others who may be exposed to the same risks, a distinction drawn by neither the statute[8] nor the insurance policy.[9] This would diminish coverage for the other families involved and result in each such group probably recovering $5,000.[10] It would also reduce the insurer's total liability from $60,000 to $40,000. Pacific's rationale is a presumed absence of any intent on the part of a policyholder to extend protection for non-family members beyond that which attaches to a vehicle in which they may be passengers. It also relies on the "limits of liability" clause of the policy to bolster the contention that neither insurer nor policyholder contemplated coverage for such passengers extending beyond the protection provided for the vehicle they occupied. This aspect of the problem, however, was discussed and decided in *Takahashi*.

While an application of *Morgan* and *Takahashi* to the tragic circumstances involved here may result in unfairness for the policyholder and his family, an application of Pacific's proposed rule to other more common occurrences may likewise result in injustice. For example, we think it would also be unfair to apply Pacific's suggested limitation where the death or serious injury of a fiancee or a close relative not resident in the policyholder's household is involved, even from the standpoint of a policyholder.

---

[8] HRS § 431-448 states in pertinent part that coverage should be provided:

[F]or the protection of *persons* insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . . (Underscoring added).

As the statute clearly draws no distinction between classes of "insured," there appears to be no basis for a construction thereof that would favor one class of "insured" over another.

[9] The policy provides identical coverage for each class of persons "insured" thereunder. *See* n.2, *supra*.

[10] In answer to interrogatories propounded by Pacific, the administrators of the Estates of Leonila B. Cabatu, Espanita M. Tabladillo, and Fe Buncayao Pascua responded that their decedents were not covered by uninsured motorist endorsements of other liability insurance policies.

Our decisions from *Walton* to *Takahashi* reflect a conviction that the effectuation of a legislative policy to provide protection for innocent victims of negligent uninsured drivers in stated amounts precludes any contractual diminution of recovery below such minima. Where protection in the sum of $60,000 under the multi-vehicle policy in question is statutorily mandated, a limitation of recovery premised on an unexpressed intent of an insurance policy clause would be an impermissible reduction of coverage for some of those insured under the policy, even if such limitation brought a "fairer" result for others insured thereunder. It would be inconsistent with the law and its purpose of providing widespread protection against a recognized peril to rule otherwise.

Affirmed.

*David J. Dezzani (Michael D. Tom* with him on the briefs; *Goodsill, Anderson & Quinn* of counsel) for defendant-appellant.

*B. Martin Luna (Ueoka & Luna* of counsel; *James Krueger* for plaintiffs-appellees with him on the brief) for intervenors-appellees.

### DISSENTING OPINION OF MENOR: J. WITH WHOM LUM. J., JOINS

I dissent.

To sustain the trial court's award to the plaintiffs-passengers in this case, the majority of this court has presumed the existence of a legislative policy where none, in my opinion, exists. But what is particularly disturbing to me is that it has also presumed to rely upon judicial precedent in this jurisdiction where none applicable to these claimants has been established.

I.

In this case, Mrs. Calibuso was driving a vehicle owned by her and her husband. Riding as passengers were her friends, Mrs. Cabatu, Mrs. Pascua, and Mrs. Tabladillo [hereinafter

"plaintiffs-passengers"]. Their automobile was struck by an uninsured motorist, and as a result all four occupants were fatally injured. In effect at the time was a Pacific Insurance policy with an uninsured motorist endorsement covering three vehicles owned by Mr. and Mrs. Calibuso. One of these was the automobile involved in the accident. A separate premium was paid by the Calibusos for each vehicle covered by the policy. The policy limits were $10,000 per person and $20,000 for each accident involving any of the three vehicles. The issue before the trial court was, whether the estates of the deceased plaintiffs-passengers could recover not only under the uninsured motorist insurance endorsement attributable to the vehicle in which they were riding at the time of the accident but also under the coverage for the other two automobiles which were not involved. The trial court ruled in their favor and held that they could recover under the aggregate insurance coverage for all three vehicles.

Pacific Insurance concedes that by reason of this court's decisions in *Allstate Insurance Company v. Morgan*, 59 Haw. 44, 575 P.2d 477 (1978), and *American Insurance Company v. Takahashi*, 59 Haw. 59, 575 P.2d 881 (1978), the Calibusos would be entitled to recover under the insurance coverage for all three of their automobiles. The company asserts, on the other hand, that the plaintiffs-passengers in this case are not entitled to similar treatment. I agree. The majority of this court, however, has rejected the insurance company's argument and affirmed the trial court's ruling with the judicial pronouncement that "the effectuation of *a legislative policy* to provide protection for innocent victims of negligent uninsured drivers in stated amounts *precludes any contractual diminution of recovery below such minima*," and that "[i]t would be inconsistent with *the law and its purpose* of providing widespread protection against a recognized peril to rule otherwise." *Majority Opinion* at 433. (Emphasis added)·

I would suggest that the majority has misread the language of the uninsured motorist statute and has misconceived the legislative policy underlying its enactment. HRS § 431-448 (1976) provides as follows:

> No automobile liability or motor vehicle liability policy

insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of *a motor vehicle*, shall be delivered, issued for delivery, or renewed in this State, with respect to *any motor vehicle* registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, *in limits for bodily injury or death set forth in section 287-7*, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing. (Emphasis added)

The minimum limits set forth in HRS § 287-7 are $10,000 per person and $20,000 for each accident, *for a single automobile*.

Nowhere in the language of either statute is there any requirement that the plaintiffs-passengers must have been insured for more than the coverage attributable to the vehicle in which they were riding at the time of the accident. In the first place, it must be remembered that there is no statutory mandate that the automobile they occupied must have been covered by uninsured motorist insurance. HRS § 431-448. In the second place, all that HRS § 431-448 requires is that an insurance company offering liability insurance for a particular automobile must also offer to the owner of *that automobile* uninsured motorist insurance protection coextensive with the statutorily-mandated liability coverage for the automobile. The owner of the vehicle may accept or reject the offer. In this case, Pacific Insurance offered to provide uninsured motorist coverage for the vehicle involved in the accident, in the amount of $10,000 per person and $20,000 for each accident. This was in full compliance with the uninsured motorist statute. The Calibusos accepted the offer, but the majority of this court would now impose upon the insurance company an

obligation which neither the statute nor contract law has required it to assume. As a further consequence the majority has, as I will explain later, reduced the amount to which the Calibusos would have been entitled under *Morgan* and *Taka-hashi*.

Neither is there any support in the legislative history of the uninsured motorist statute for the majority finding of a "legis-lative policy" favoring the plaintiffs-passengers in this case. In Standing Committee Report No. 194 on H.B. 26 (now HRS § 431-448), the legislature said:

> The purpose of this bill is to promote protection, through voluntary insurance, for persons who are injured by uninsured motorists who cannot pay for personal in-juries caused by motor vehicle accidents. The bill would require all companies writing policies insuring against liability for personal injuries and property damages *to offer to their clients* "uninsured motorist protection."
>
> An insurance company offering uninsured motorist protection *engages to pay to the insured, spouse or minor children of either, resident in the named insured's house-hold,* sums not to exceed the stated limits, for any un-collectible valid claim or unsatisfied judgment for dam-ages resulting from bodily injury or death, resulting from the ownership, maintenance or use of an automobile. The claim becomes payable when the innocent victim shows that his claim is valid, that is, that there is legal liability on the person alleged to be responsible and that the claim cannot be collected because of the financial irresponsibil-ity of that person or because of the inability to identify the person or persons responsible. [1965 House Journal at 582.] (Emphasis added)

In *Palisbo v. Hawaiian Insurance Guaranty Co.*, 57 Haw. 10, 15, 547 P.2d 1350, 1354 (1976), we expressly recognized the purpose as well as the intended primary beneficiaries of the statute:

> The avowed purpose of the statute is to encourage self-protection against the financially irresponsible motorist through *voluntary insurance*. To make this realistically possible, it requires liability insurance com-

panies to offer their clients this protection in at least the minimum amounts established by the financial responsibility law. The policy required under the financial responsibility law is for the protection of the public generally, while uninsured motorist insurance is for individuals who have the foresight to protect themselves against the financially irresponsible motorist. *The statute was clearly designed to enable the purchaser of the latter type of insurance to assure himself and members of his household* of not less than the minimum protection provided for the general public in the financial responsibility law. The uninsured motorist policy is personal to the insured. This is what he bargained for, and one which he was encouraged to purchase by the legislature. (Emphasis added)

From the foregoing, it ought to be readily apparent that neither statute nor legislative policy requires that the plaintiffs-passengers be covered for more than the amount of uninsured motorist insurance attributable to the vehicle in which they were riding at the time of the accident. The majority holding, therefore, that they may recover in excess of this coverage does violence, in my opinion, to the express terms of the insurance contract and is totally unsupported by either the language of the statute or by the legislative history of the enactment.

II.

The majority of this court has also taken the position that the issue in this case was settled by *Morgan* and *Takahashi*. Frankly, I am surprised and I must, of course, disagree. At no time was the precise issue now before us ever presented to this court for its consideration, and clearly the question was not even involved in those appeals.

When a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle. But "[a] prior decision on a legal point has stare

decisis effect only if the same, or substantially the same, question is involved in the later case. To determine whether the questions are identical or substantially so, the alleged precedent must be considered *in the light of the facts and issues existing in the prior case as determined from a reading of the prior opinion as a whole.* Where the facts are essentially different, stare decisis does not apply, for a perfectly sound principle as applied to one set of facts might be entirely inappropriate when a factual variance is introduced.'' 20 Am. Jur.2d, *Courts,* § 191. (Emphasis added)

The facts in *Morgan* and *Takahashi* and the basic issue which this court was called upon to address in those cases are fundamentally different from the facts and the issue we must now consider in this case. The critical issue in those cases was whether *the owner of the policy and related family members* were entitled to stack coverages under the uninsured motorist insurance policies there involved.

In *Morgan,* the claimant Lindarae Morgan was operating a motor vehicle owned by one Stanley Jumawan. She was struck and injured by an uninsured motorist. On the day of the accident, there was in effect an Allstate "Crusader" automobile insurance policy issued to Lindarae's father. The policy provided coverage for three automobiles owned by her father who paid separate insurance premiums for each of the three cars. None of these cars was involved in the accident in question. Nevertheless, claim was made by Lindarae against her father's insurance company even though she was not riding in any of her father's automobiles at the time of the accident. The issue was whether Allstate was liable to Lindarae. We held that it was.

In *Takahashi,* one of the claimants, Masashi Fukumoto, was driving an automobile owned by his daughter Karen and insured by Fireman's Fund Insurance Company. Karen and Mrs. Fukumoto were his passengers. All three were injured, Mrs. Fukumoto fatally, by an uninsured motorist. At the time of the accident, Mr. Fukumoto owned two vehicles which were insured by American Insurance Company. Claim was made by all three against Mr. Fukumoto's company even though, as in *Morgan,* none of them was occupying any of the

insured automobiles at the time of the accident. Recovery by all three against American Insurance was allowed.

Lindarae in *Morgan* was claiming under *her father's* uninsured motorist policy. Mr. Fukumoto in *Takahashi,* was claiming under *his* uninsured motorist policy. His daughter *Karen* was claiming under *her father's* policy, and his wife's estate was claiming under *her husband's* policy.

There were two categories of insured designated in the *Morgan* and *Takahashi* policies just as there are in this case. Category I included the named insured or policyholder and his resident relatives, and Category II consisted of any other person *while occupying an insured automobile.* Each of the claimants in *Morgan* and *Takahashi* were members of the first category. The plaintiffs-passengers in this case belong to the second category. The "insured" to which this court referred in *Morgan* and *Takahashi* were members of the first category. In *Morgan* we said:

> *Lindarae Morgan qualifies as an insured under Category I* ["the insured and his relatives while residents of his household"] of the above provision. *Neither of the above provision[s] nor any other uninsured motorist provision in the policy requires that an insured under Category I* must be in a vehicle insured under the policy at the time injury occurs in order to recover uninsured motorist insurance benefits. [59 Haw. at 48, 575 P.2d at 479, fn. 5.] (Emphasis added)

And in *Takahashi,* we said:

> *Category (a) of the definition of "insured"* ["the named insured and any relative"] *contains no requirement that the named insured or relatives* must have been travelling in a vehicle insured under the policy in order to recover uninsured motorist benefits. [59 Haw. at 64, 575 P.2d at 884, fn. 6.] (Emphasis added)

Thus, when this court said in *Takahashi* that "[t]he nature of uninsured motorist insurance is such that an insured is covered whether or not he or she is injured while in a vehicle which is insured under the policy," it was addressing itself to

the members of the first category. 59 Haw. at 47, 575 P.2d at 479.

The flaw in the majority analysis, it seems to me, stems from the majority's inability or unwillingness to appreciate the difference in status between the named insured (the Calibusos) and members of their household and the plaintiffs-passengers in this case. This difference, however, is fundamental and has been recognized by other jurisdictions addressing the issue. *See Lambert v. Mutual Insurance Company*, 331 So.2d 260 (Ala. 1976); *Long v. United States Fidelity and Guaranty Co.*, 396 F.Supp. 966 (D. Ala. 1975); *Moomaw v. State Farm Mutual Automobile Ins. Co.*, 379 F.Supp. 697 (D. W.Va. 1974); *Cunningham v. Ins. Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972). In *Lambert*, the Alabama Supreme Court denied stacking to an occupant not related to the policyholder and emphasized the distinction:

> The status of [a passenger] (for the purpose of uninsured motorist coverage) as an insured, solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy. [331 So.2d at 265.]

The Alabama court had earlier held that insureds in the first category (in that case the policyholder and his wife) could stack their coverages because they had paid for the extra protection. *Employers Liability Assur. Corp., Ltd. v. Jackson*, 289 Ala. 673, 270 So.2d 806 (1972).

In *Long*, the plaintiff, Karen Ann Long, was riding in a vehicle driven by her friend, Brenda Ann Kepple, when it was struck by an uninsured motorist. The vehicle was owned by Brenda's father who was the holder of an uninsured motorist policy insuring two automobiles, one of which was the vehicle involved in the accident. Karen Long attempted to recover under the combined coverage for both of the Kepple vehicles. The federal court denied her claim and limited her recovery to the insurance for the particular vehicle in which she was riding at the time of the accident. In so holding, the court expressly recognized the soundness of the distinction drawn

by the Virginia Supreme Court in *Cunningham v. Ins. Co. of North America, supra,* where the latter court said:

> The purpose of uninsured motorist insurance is to provide compensation to the innocent victim of the uninsured motorist. The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured. [213 Va. 72, 77, 189 S.E.2d 832, 836 (1972).]

The reasoning in these cases is consistent with Hawaii's own legislative policy underlying the enactment of HRS § 431-448, for as we pointed out in *Palisbo v. Hawaiian Insurance Guaranty Co., supra,* the policyholder may contract for uninsured motorist protection, for himself and members of his household, in excess of the minimum limits prescribed by the statute. This contractual arrangement "is personal to the insured. This is what he bargained for, and one which he was encouraged to [enter into] by the legislature." 57 Haw. at 15, 547 P.2d at 1354. It was on the basis of this legislative policy, and only where the policyholder and members of his household were concerned, that this court invalidated the "limits of liability" clauses in *Morgan* and *Takahashi*. Stacking is allowed the policyholder, or members of his household, on the presumption that when he purchases uninsured motorist insurance coverage for more than one automobile, his intent is to buy extra protection for himself and his family, regardless of whether the injuries occur in any of the insured vehicles or elsewhere. *Lambert v. Mutual Insurance Company, supra; Long v. United States Fidelity and Guaranty Co., supra; Moomaw v. State Farm Mutual Automobile Co., supra; Cunningham v. Ins. Co. of North America, supra.* The same cannot be said for the occupant not related to the policyholder. His recovery is limited to the insurance attributable to

the vehicle in which he was riding at the time of the accident. *Id.* This limitation, however, would not deprive the plaintiffs-passengers in this case of the benefit of this court's holdings in *Morgan* and *Takahashi*. For they would, *additionally*, still be entitled to recover under *their own* or *their respective husbands'* uninsured motorist policies. *This* was the issue decided in *Morgan* and *Takahashi*.

### III.

It is indeed ironic that the majority of this court, rather than furthering the legislative policy of the statute, as expressed in the legislature's committee report and as applied by this court in *Morgan* and *Takahashi*, has instead diluted its beneficial effects. This has been done at the expense of the policyholders (the Calibusos) who paid for the extra protection and in derogation of the contractual provisions upon which they and their insurance company had a right to rely.

Under *Morgan* and *Takahashi* the Calibusos would have been entitled to a maximum recovery of $25,000: $5,000 as their share of the per accident coverage for the vehicle which was struck by the uninsured motorist, and $20,000 from the insurance ($10,000 per person coverage for each vehicle) attributable to their other two vehicles which were not involved in the accident. Along with the Calibusos, the three plaintiffs-passengers would share in the $20,000 per accident coverage for the vehicle involved, for a total of $5,000 per plaintiff-passenger. Instead, the majority would add the per accident coverage of $20,000 for each vehicle, for a total of $60,000 for the three vehicles, and divide this amount by four. The Calibusos would thus receive only $15,000, instead of $25,000, and each of the plaintiffs-passengers would receive the same amount of $15,000. The majority appears to recognize the resulting injustice, but has attempted to explain it away by stating:

> While an application of *Morgan* and *Takahashi* to the tragic circumstances involved here may result in unfairness for the policyholder and his family, an application of

Pacific's proposed rule to other more common occurrences may likewise result in injustice. For example, we think it would also be unfair to apply Pacific's suggested limitation where the death or serious injury of a fiancee or a close relative not resident in the policyholder's household is involved, even from the standpoint of a policyholder. [Majority Opinion at 432.]

I would suggest that the injustice to the Calibusos cannot so easily be dismissed.[1] By its misapplication of *Morgan* and *Takahashi* to the facts of this case, the majority of this court has deprived the Calibusos of insurance coverage for which they have paid. It would be absurd to suggest that the Calibusos expected to receive less than the coverage for which they paid and to which they were entitled by reason of statute and legislative policy.

Not only have the Calibusos been denied the full measure of their contractual and statutory rights, they have been placed at a potential disadvantage vis-a-vis the plaintiffs-passengers. Since it is not at all unlikely that the latter or their husbands were also owners of automobiles covered by uninsured motorist insurance, let us assume that each of them had a car covered. Under the majority holding, this would mean that not only would the plaintiffs-passengers be entitled to $15,000 each from the Calibuso insurance, they would also be entitled, by reason of *Morgan* and *Takahashi*, to another $10,000 under their respective policies, for a total recovery each of $25,000 as compared to $15,000 for the Calibusos. And if they each had three cars covered as did the Calibusos, they would each receive the total sum of $45,000 compared to $15,000 for the Calibusos. Such a result obviously was never

---

[1] Neither can the rights of Pacific Insurance be totally disregarded. Justice, after all, must be applied evenhandedly. Ambiguities in insurance contracts are to be resolved against the insurer. This is a sound principle. Industrial Indemnity Co. v. Aetna Casualty & Surety Co., 465 F.2d 934 (9th Cir. 1972); Mason v. National Flood Insurer's Association, 361 F. Supp. 939 (D. Haw. 1973); Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970). But where the limits of liability are as clear as they are here, and there is neither statute nor statutory policy requiring a greater coverage, the contract terms must prevail.

444

contemplated by the statute or intended by this court in *Morgan* and *Takahashi*.

I would reverse.