**MARVIN LEE,** Petitioner–Appellant, v. **INSURANCE COMPANY OF NORTH AMERICA,** a corporation, Respondent–Appellee

NO. 12286

(CIV. NO. 85–1964)

OCTOBER 26, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

In this case we address the question of whether "stacking" of uninsured motorist coverage should be permitted under a single "Business Auto Policy" covering a group of 1,106 separately owned vehicles. We granted certiorari to review the Intermediate Court of Appeals' decision affirming the lower court's grant of summary judgment to Respondent Insurance Company of North America (INA) on the issue of stacking. We affirm the intermediate court's conclusion that stacking should be denied under these facts, however, we disagree with the intermediate court's reasoning in applying the principle of "reasonable expectations" in this case.

## I.

Petitioner, a police officer employed by the City and County of Honolulu, was struck and injured by an uninsured motorist while occupying his privately owned, but City subsidized automobile. The vehicle was insured under a single "Business Auto Policy" providing uninsured motorist coverage in the amount of $25,000 per vehicle for 1,106 vehicles. The premium in the amount of $3.00 per vehicle was paid by the City. The intermediate court characterized the policy as a commercial fleet policy, however, the "Business Auto Policy" in the instant case does not meet the intermediate court's definition of a "fleet" policy. The intermediate court defined a fleet policy as one "covering a number of vehicles owned by a business or government entity." Here, the vehicles are owned by individual police officers, not by the City. Also, unlike the typical fleet policy in which the employer is the named insured, here, the City employees are also named insureds due to the unique practice in this state for motor patrolmen to use their own automobiles in performance of their official duties.[1]

Respondent INA paid Petitioner the $25,000 policy limit on the uninsured motorist coverage, but refused any further recovery based on stacking. The trial court denied Petitioner's motion for partial summary judgment on the issue of stacking and granted Respondent's cross–motion for summary judgment.

On appeal the intermediate court affirmed the trial court, holding that stacking was not permitted under these circumstances. The intermediate court reached that result by applying the principle of "reasonable expectation," concluding that it was unreasonable for either the City or Petitioner to expect that the $3.00 charge for uninsured motorist coverage for each vehicle would afford Petitioner coverage for all of the vehicles included in the policy.

---

[1] The policy listed as "named insureds" (1) the City and County of Honolulu and the Honolulu Police Department and (2) the Honolulu Police Department employees.

## II.

Petitioner contends that the intermediate court's decision is inconsistent with this court's prior rulings allowing the stacking of uninsured motorist benefits under a single policy covering more than one automobile. He claims that the "Business Auto Policy" in this case covering 1,106 vehicles is no different from the personal automobile policies involved in previous stacking cases. We disagree since we find that fundamental differences exist between the circumstances of this case and those of our prior decisions.

This court has, on several occasions, considered the "stacking" of uninsured motorist insurance coverage under a single multi–vehicle policy. In *Allstate Ins. Co. v. Morgan*, 59 Haw. 44, 575 P.2d 477 (1978), the claimant was permitted to stack three separate coverages under her father's policy even though she was injured in a fourth independently owned automobile. Similarly, in *American Ins. Co. v. Takahashi*, 59 Haw. 59, 575 P.2d 881 (1978), the claimants (husband, wife and daughter) were injured while occupying the daughter's car. All three were allowed to recover aggregated benefits under a policy owned by the father covering two vehicles not involved in the accident. And in *Estate of Calibuso v. Pacific Ins. Co.*, 62 Haw. 424, 616 P.2d 1357 (1980), three passengers were permitted to recover against aggregated benefits under their host's policy covering three automobiles. *Calibuso* declined to distinguish between "classes" of insureds to favor the named insured and relatives of the same household over persons occupying the automobile. The guiding principle underlying all of these decisions was to effectuate the legislative intent of the uninsured motorist statute HRS § 431–448 "to protect innocent victims of financially irresponsible drivers." 62 Haw. at 430, 616 P.2d at 1360.

Petitioner argues that the issue in this case was settled by *Morgan*, *Takahashi*, and *Calibuso* which permitted named insureds and passengers to stack coverages under personal automobile insurance policies. He also claims that to deny stacking in this case would be inconsistent with the legislative intent of HRS § 431–448 as we have construed it. We disagree. When a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle. Where the facts are essentially different, however, *stare decisis* does not apply, for a perfectly

sound principle as applied to one set of facts might be entirely inappropriate when a factual variance is introduced. 20 Am. Jur. 2d *Courts* § 191 (1965).

The facts in *Morgan*, *Takahashi*, and *Calibuso* are fundamentally different from the situation we must now consider in this case. None of these decisions addressed the issue of stacking uninsured motorist coverages provided to a large group of unrelated insureds by a common employer. The INA policy in the instant case is not a personal automobile insurance policy covering a number of vehicles owned by an individual. Rather, it is a group policy insuring over one thousand vehicles which are connected only by the common fact of ownership by City employees. Given these fundamental factual differences, we do not find our prior decisions to be controlling here. Any assumption that these decisions stand for the broad contention that uninsured motorist coverages must be allowed to be stacked in *all* cases, is unjustified.

The public policy considerations underlying our prior decisions do not warrant extending the stacking principle to the group policy in this case. In *Palisbo v. Hawaiian Ins. & Guar. Co.*, 57 Haw. 10, 15, 547 P.2d 1350, 1354 (1976), we said:

> [U]ninsured motorist insurance is for individuals who have the foresight to protect themselves against the financially irresponsible motorist . . . . The uninsured motorist policy is personal to the insured. This is what he bargained for, and one which he was encouraged to purchase by the legislature.

We recognized that "[t]he avowed purpose of the statute is to encourage self–protection against the financially irresponsible motorist through *voluntary insurance*." *Id.* We examined the legislative history of the uninsured motorist statute, HRS § 431–448. According to the legislature, the purpose of the law was "to promote protection through voluntary insurance, for persons who are injured by uninsured motorists who cannot pay for personal injuries caused by motor vehicle accidents." Stand. Comm. Rep. No. 194, in 1965 House Journal, at 582.

Allowing injured persons to recover by stacking benefits under a personal automobile insurance policy is consistent with the legislative purpose. We do not find, however, either by statutory provision or compelling precedent, that public policy in Hawaii requires uninsured motorist benefits to be aggregated under a group policy covering 1,106 unrelated

vehicles. To allow stacking in this case for a total of $27 million dollars in uninsured motorist coverage would not serve to promote the statutory purpose and may even undermine it. Such a dramatic increase in exposure may well lead to increased premiums causing employers such as the City and County of Honolulu to decline to purchase voluntary uninsured motorist coverage at all. While the principle of "stacking" was initially created by this court to serve the public interest, it need not be extended indefinitely to the point where it no longer serves that interest.

While we are in accord with the result reached by the intermediate court that stacking should not be permitted in this case, we disagree with the intermediate court's reasoning in applying a rule of "reasonable expectation" to stacking of uninsured motorist coverage. Contrary to the intermediate court's assertion, we did not apply the principle of "reasonable expectation" in *Allstate Ins. Co. v. Morgan, supra*, and we find it unnecessary to adopt such a rule in the present case.[2] Nor do we address the question of commercial fleet policies at this time.[3] We simply hold that the public policy considerations underlying the principle of stacking of uninsured motorist coverage do not warrant extending that principle to a "Business Auto Policy" covering 1,106 vehicles separately owned by the

[2]In *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 684 P.2d 960 (1984), we were faced with a question of interpretation of the terms of an insurance contract. We said that insurance policies "are to be construed in accord with the reasonable expectations of a layperson." *Id.* at 209, 684 P.2d at 964. The instant case does not present such a question.

[3]We note, however, that other jurisdictions addressing the issue of stacking in the commercial fleet context have almost unanimously denied stacking. Even states which have permitted stacking of uninsured motorist coverage under an individual's personal policy have refused to extend stacking to fleet policies. *See, e.g., Lambert v. Liberty Mut. Ins. Co.*, 331 So. 2d 260 (Ala. 1976); *Hines v. Home Ins. Co.*, 495 So. 2d 682 (Ala. App. 1986); *Ohio Casualty Ins. Co. v. Stanfield*, 581 S.W.2d 555 (Ky. 1979); *Howell v. Harleysville Mut. Ins. Co.*, 305 Md. 435, 505 A.2d 109 (1986); *Murphy v. Milbank Mut. Ins. Co.*, 388 N.W.2d 732 (Minn. 1986); *Linderer v. Royal Globe Ins. Co.*, 597 S.W.2d 656 (Mo. App. 1980); *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *Taft v. Cerwonka*, 433 A.2d 215 (R.I. 1981); *American Universal Ins. Co. v. Russell*, 490 A.2d 60 (R.I. 1985); *Cunningham v. Insurance Co. of N. Am.*, 213 Va. 72, 189 S.E.2d 832 (1972); *Continental Casualty Co. v. Darch*, 27 Wash. App. 726, 620 P.2d 1005 (1980).

motor patrolmen of the Honolulu Police Department. Our holding is a narrow one applying to the unique factual pattern presented in this instant case.

### III.

Therefore, while we decline to adopt the reasoning of the intermediate court's decision, we conclude that the result reached by the intermediate court was correct and we affirm.

*Norman K. K. Lau,* for the writ and on the brief, for Petitioner–Appellant.

*Paul T. Yamamura* and *Jonathan L. Ortiz,* contra and on the brief, for Respondent–Appellee.

*Carleton B. Reid* and *Ross N. Taosaka,* on the brief, for Amicus Curiae First Insurance Co. of Hawaii, Ltd.

*Walter S. Kirimitsu, Henry N. Kitamura* and *Scott E. Kubota,* on the brief, for Amicus Curiae Hawaii Academy of Plaintiffs' Attorneys.