587 So.2d 1314 (1991)
FLORIDA FARM BUREAU CASUALTY COMPANY, Petitioner,
v.
Rigoberto HURTADO, et ux., Respondents.
No. 75624.
Supreme Court of Florida.
November 7, 1991.
*1315 George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for petitioner.
Mark J. Feldman, P.A., Miami, and John Beranek of Aurell, Radey, Hinkle & Thomas, Tallahassee, for respondents.
PER CURIAM.
We have for review Hurtado v. Florida Farm Bureau Casualty Co., 557 So.2d 612 (Fla.3d DCA 1990), which expressly and directly conflicts with American States Insurance Co. v. Kelley, 446 So.2d 1085 (Fla. 4th DCA), review denied, 456 So.2d 1181 (Fla. 1984), and Liberty Mutual Insurance Co. v. Trombley, 445 So.2d 709 (Fla. 4th DCA 1984).[1]
On October 26, 1987, Rigoberto Hurtado was severely injured in an automobile accident when the vehicle he drove collided with a vehicle owned and driven by an uninsured motorist. Hurtado was employed as a mechanic by Miranda Groves and Nurseries, Inc. (Miranda). At the time of the accident, Hurtado was operating a vehicle owned by Miranda and provided to Hurtado as part of his employment benefits. All insurance, maintenance costs, and registration fees were paid by Miranda, and Hurtado was allowed to use the vehicle for both business and personal use. He also was allowed to use all other vehicles owned by his employer.
Florida Farm Bureau Casualty Co. (Florida Farm) issued to Miranda a "business auto policy" in which Miranda was the named insured. The policy defined an "insured" as anyone using a covered auto with permission of the named insured. This policy covered Hurtado's vehicle as well as ten other vehicles owned by Miranda. The policy provided uninsured motorist coverage of $300,000 per person and $500,000 per accident on each of the eleven vehicles, with separate premiums charged for that coverage. Florida Farm does not contest that Hurtado was insured under the policy. The disputed issue is whether Hurtado is entitled to stack the coverages on each of the corporately owned vehicles for a total of $3.3 million or is limited to $300,000 on the vehicle he was driving.
The trial court precluded the stacking and granted Florida Farm's motion for summary judgment. The Third District Court of Appeal reversed, concluding that Hurtado was entitled to stack the available uninsured motorist coverage on automobile *1316 policies issued to his corporate employer under section 627.4132, Florida Statutes (1987).[2] Florida Farm seeks review, contending that only named insureds or their immediate family members may stack insurance benefits under well-established case law. Florida Farm asserts that Hurtado is neither the named insured nor a family member, and thus he is not entitled to stack under his corporate employer's policy. Florida Farm relies on American States Insurance Co. v. Kelley, 446 So.2d at 1085, and Liberty Mutual Insurance Co. v. Trombley, 445 So.2d at 709, which construed section 627.4132 as permitting only named insureds and their resident family members to stack multiple uninsured motorist coverage.
We begin by noting that there is nothing on the face of section 627.4132 to preclude Hurtado from receiving the benefits of stacking. Indeed, the statute generally prohibits stacking but specifically excludes uninsured motorist coverage from the prohibition. Florida Farm's argument, however, derives from case law antedating legislation on stacking which established classifications of beneficiaries entitled to uninsured motorist coverage. To resolve the issue in this case, we must trace the history of stacking in Florida and examine the applicability or the continued viability of these classifications.
Originally, stacking in Florida was not addressed by the legislature at all and was first permitted by the Court in Tucker v. Government Employees Insurance Co., 288 So.2d 238 (Fla. 1973). In Tucker, the plaintiff, whose daughter was injured by an uninsured motorist, had uninsured motorist coverage in the amount of $10,000 on each of his two vehicles. The policy expressly prohibited the stacking of the coverage on the two vehicles. The Court held that such an exclusion from coverage was prohibited by the uninsured motorist statute, and thus the insurance company could not preclude a named insured from stacking the available coverage. The Court relied in part on its prior opinion in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), which did not involve stacking, but did determine that under Florida law, an insurance company could not exclude a named insured from uninsured motorist coverage even though the named insured was not operating a vehicle insured under the policy.
In Mullis, Shelby Mullis and his son Richard sued State Farm to collect uninsured motorist benefits under two policies that insured two automobiles owned by Mullis. Richard, who was insured under the policy because he was a relative residing in the household, had been injured by an uninsured motorist while operating a motorcycle that was not covered under either policy. The policies excluded coverage for bodily injury if the injury did not occur in a vehicle specifically insured under the policy. The Court held that such an exclusion was legally impermissible under Florida law and that Mullis purchased uninsured motorist coverage intending for that coverage to be available to himself and members of his family as if the uninsured motorist had liability insurance in conformance with Florida law:
Whenever bodily injury is inflicted upon named insured or insured members of his family by the negligence of an uninsured motorist, under whatever conditions, locations, *1317 or circumstances, any of such insureds happen to be in at the time, they are covered by uninsured motorist liability insurance issued pursuant to the requirements of Section 627.0851[, Florida Statutes (1965)].
252 So.2d at 233.
The Court went on to note that this rationale was inapplicable to those who were not named insureds or resident family members:
This, of course, would not be the case as to other persons potentially covered who are not in the class of the named insured and relatives resident in the Mullis household. These latter are protected only if they receive bodily injury due to the negligence of an uninsured motorist while they occupy the insured automobile of the named insured with his permission or consent.
Id. Subsequent cases recognized and applied the Mullis class distinction: class one consisting of the named insured and resident family members; and class two consisting of those who are insured only because they are drivers or passengers in an insured vehicle with the consent of the named insured. See, e.g., Florida Ins. Guar. Ass'n v. Johnson, 392 So.2d 1348 (Fla. 5th DCA 1980); Hunt v. State Farm Mut. Ins. Co., 349 So.2d 642 (Fla. 1st DCA 1977); Travelers Ins. Co. v. Pac, 337 So.2d 397 (Fla. 2d DCA 1976), cert. denied, 351 So.2d 407 (Fla. 1977).
In Travelers Insurance Co. v. Pac, 337 So.2d at 397, the Second District denied the stacking claim of an injured party who was a class-two insured; he was driving an insured vehicle but was not a named insured or resident family member. The court applied the combined rationales of Tucker and Mullis and concluded that although stacking was allowed for class-one insureds, it was not allowed for class-two insureds. Id. at 398.
In 1976, the legislature directly addressed stacking for the first time by enacting chapter 76-266, section 10, Laws of Florida (codified at section 627.4132, Florida Statutes (Supp. 1976)). This statute expressly prohibited the stacking of coverages, including uninsured motorist coverage. It provided:
627.4132 Stacking of coverages prohibited.  If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, uninsured motorist, personal injury protection, or any other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the *1318 accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.
§ 627.4132, Fla. Stat. (Supp. 1976) (emphasis added). Since class-two insureds were already prohibited from stacking under the then-current case law, this statute operated only to prohibit class-one insureds from stacking as well.
In 1980, the legislature changed its mind with reference to uninsured motorist coverage and amended the statute. The words "uninsured motorist" were deleted from the first sentence and a new sentence was added stating that the antistacking section did not apply to uninsured motorist coverage. See ch. 80-364, § 1, Laws of Fla. (amending § 627.4132, Fla. Stat. (1979)). The law, as amended, provided:
627.4132 Stacking of coverages prohibited.  If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, uninsured motorist, personal injury protection, or any other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply to uninsured motorist coverage. This section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds.
Id. (underscore and strike through in original).
Hurtado argues that this change signaled the legislature's intent to eliminate the classification distinction under Mullis, permitting Hurtado to stack the uninsured motorist benefits of the policies. Florida Farm argues that the amendment merely removed the prohibition against stacking as applied to class-one insureds and reinstated the case law that existed prior to 1976. To support his view of the legislative intent, Hurtado relies upon the portion of a Senate staff analysis of the 1980 amendment addressing its economic impact, which indicated that as a result of the amendment, "commercial vehicle fleets would have UM coverage multiplied by as many vehicles covered by the policy" and that accordingly, "UM rates would increase by an average of 15%." Staff of Fla.S.Comm. on Com., HB 1315 (1980) Staff Analysis (final June 10, 1980) (on file with committee). This might be persuasive but for the statement contained in another part of that same document, under the heading "Effect of Proposed Change":
This [amendment] would revive prior case law which permitted and determined the extent of the stacking of UM insurance coverage.
Id. (emphasis added).
Furthermore, the bill analysis from the House, where the bill originated, likewise notes:
This bill simply eliminates the prohibition against stacking and would thus revive prior case law which permitted and determined the extent of the stacking of uninsured motorist insurance policies.
Staff of Fla.H.R.Comm. on Ins., HB 1315 (1980) Staff Analysis (June 16, 1980) (on file with committee) (emphasis added).
Accordingly, at the very least, the legislative history appears equally to support Florida Farm's view that the 1980 amendment intended merely to remove the prior statutory prohibition and not to grant an affirmative right to stack. Moreover, the statement from the Senate staff analysis on which Hurtado relies is not necessarily inconsistent with prior case law because prior law permitted a class-one insured to stack under a fleet policy. See Florida Farm Bureau Casualty Co. v. Andrews, 369 So.2d 346 (Fla. 4th DCA 1978) (named insured permitted to stack seven commercial vehicles in fleet policy), cert. denied, 381 So.2d 764 (Fla. 1980), and cert. denied, 381 So.2d 766 (Fla. 1980), receded from on other grounds, Lackore v. Hartford Accident & Indem. Co., 390 So.2d 486 (Fla. 4th DCA 1980), approved, 408 So.2d 1040 (Fla. 1982); Lumbermens Mut. Casualty Co. v. Martin, 399 So.2d 536 (Fla.3d DCA) (resident relative of named insured permitted to stack under policy insuring commercial vehicles), review denied, 408 So.2d 1094 (Fla. 1981). In the absence of any evidence of legislative intent to the contrary and under a plain reading of the two pertinent statutes, we conclude that the legislature merely reinstated the status which existed prior to the enactment of section 627.4132 in 1976.
We also reject Hurtado's argument that we should reconsider the Mullis classifications in the context of stacking uninsured motorist coverage. The distinction between class-one and class-two insureds has been firmly entrenched in Florida law for more than twenty-five years. Moreover, there is logic in permitting the stacking of uninsured motorist coverage for class-one insureds but not for class-two insureds. Class-one insureds are covered regardless of their location when they are injured by *1319 an uninsured motorist. Therefore, while the payment of another premium on a second vehicle would ensure coverage for that vehicle, it would be of no benefit to an injured class-one insured unless the coverage were stacked. On the other hand, coverage for class-two insureds is limited to occupancy in the insured vehicle. In that case, the extra premium pays for coverage which would not otherwise be available. See Travelers Ins. Co. v. Pac.
It is important to realize that the stacking of uninsured motorist coverage causes the risk to increase in geometric progression. Not only is coverage provided for each additional vehicle, but also the coverage is multiplied by the number of vehicles insured.[3] This was illustrated in Howell v. Harleysville Mutual Insurance Co., 505 A.2d 109 (Md. 1986):
A total of 19 vehicles were insured. Applying the mathematics mentioned by Appleman and certain of the cases we would find that if Howell's contentions were to prevail there would be an exposure for each vehicle of $950,000 (19 X $50,000). If all 19 vehicles were on the road at one time the total exposure of the insurance company would be $18,050,000 (19 X $950,000). All of this coverage would be available for a premium of $76. This would be a truly absurd result.
Id. at 113. Thus, any requirement to stack uninsured motorist coverage for class-two insureds would necessitate drastic premium increases.
There is no merit in the suggestion that the denial of stacking results in a windfall to the insurer. As explained in Linderer v. Royal Globe Ins. Co., 597 S.W.2d 656 (Mo. Ct. App. 1980):
There is also a flaw in the reasoning that holds denial of stacking privileges permits collecting a premium from the insured and then taking away the purchased coverage. This does not happen. The premium for the individual vehicle covers at all times the occupant of that vehicle. It cannot be taken away by a limiting clause. When stacking is denied the prohibition is against shifting the coverage on one vehicle to another. The coverage on the vehicle not involved in an accident remains in force. Therefore, the insured continues to get what he has paid for.
Id. at 661.
We note that most other states which have considered the issue also make the distinction between stacking of uninsured motorist coverage for class-one and class-two insureds. E.g., Burke v. Aid Ins. Co., 487 F. Supp. 831 (D.Kan. 1980); Lambert v. Liberty Mut. Ins. Co., 331 So.2d 260 (Ala. 1976); Ohio Casualty Ins. Co. v. Stanfield, 581 S.W.2d 555 (Ky. 1979); Burns v. Fernandez, 401 So.2d 1033 (La. Ct. App. 1981); Howell v. Harleysville Mut. Ins. Co., 505 A.2d 109 (Md. 1986); Hines v. Government Employees Ins. Co., 656 S.W.2d 262 (Mo. 1983); Prudential Property & Casualty Ins. Co. v. Continental Ins. Co., 233 N.J. Super. 259, 558 A.2d 848 (1989); Rogers v. Goad, 739 P.2d 519 (Okla. 1987); Utica Mut. Ins. Co. v. Contrisciane, 504 Pa. 328, 473 A.2d 1005 (1984); Cunningham v. Insurance Co. of N. Am., 213 Va. 72, 189 S.E.2d 832 (1972); Continental Casualty Co. v. Darch, 27 Wash. App. 726, 620 P.2d 1005 (1980). Contra Harris v. Magee, 573 So.2d 646 (Miss. 1990). See Janet B. Jones, Annotation, Combining or "Stacking" Uninsured Motorist Coverage Provided in Fleet Policy, 25 A.L.R. 4th 896 (1983 & Supp. 1990).
We approve American States Insurance Co. v. Kelley and Liberty Mutual Insurance Co. v. Trombley. We quash the decision below and remand for further proceedings.
It is so ordered.
*1320 SHAW, C.J., and OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, concurring in part, dissenting in part.
Although I agree that section 627.4132 does not provide a remedy to Hurtado under preexisting case law, I believe the Mullis classifications should be reevaluated in the context of stacking uninsured motorist coverage, an issue this Court has never specifically addressed.
This question has arisen in numerous other jurisdictions with both mixed results and rationales. While the majority is correct that many states distinguish between stacking for class-one and class-two insureds, I find the rationales advanced to support that distinction superficial and unpersuasive and believe the sounder view is expressed by those courts that permit stacking for class-two insureds under certain circumstances.
Hawaii, for example, has refused to distinguish between classes of insureds, rejecting the argument that policyholders do not intend to extend protection for nonfamily passengers beyond that which attaches to the vehicle they are occupying. Estate of Calibuso v. Pacific Ins. Co., 62 Haw. 424, 616 P.2d 1357 (1980). In dismissing the claim that the "limits of liability" clause evinces such an intent, the court stated its "conviction that the effectuation of a legislative policy to provide protection for innocent victims of negligent uninsured drivers in stated amounts precludes any contractual diminution of recovery below such minima." Id. 616 P.2d at 1362. Hawaii, however, has declined to extend this rationale to a city's fleet policy covering 1,106 separately owned vehicles because of the fundamental factual differences between a personal automobile policy and a group policy insuring 1,106 unrelated vehicles. Similarly, Connecticut, which has also rejected any distinction between classes of insureds, has prohibited stacking under a fleet policy, finding such a result beyond the "objectively reasonable expectation of the parties." Cohn v. Aetna Ins. Co., 213 Conn. 525, 569 A.2d 541, 543 (1990).
Several other courts have specifically distinguished between large commercial fleet policies covering hundreds or thousands of vehicles and the small business insuring only a limited number of vehicles, permitting stacking in the latter. For example, the court in Yeager v. Auto-Owners Insurance Company, 335 N.W.2d 733, 739 (Minn. 1983), found no validity to arguments about prohibitive costs and reasonable expectations where the policy at issue covered only seven commercial vehicles. Similarly, the court in Cossitt v. Nationwide Mutual Insurance Company, 551 So.2d 879 (Miss. 1989), permitted travelers on a church bus to stack coverage on three church buses, and in fact, declined to consider the church's policy as a fleet policy at all, instead analogizing it to a multicar family policy:
It is a matter of common knowledge that many individuals have from three to seven vehicles, or more, on one policy for family use. The policy is not considered to be a fleet policy.
Id. at 884.
Still other courts have allowed stacking of commercial fleet uninsured motorist coverage because the policies were ambiguous, requiring that the ambiguity be resolved in favor of the insured. For example, in Rusthoven v. Commercial Standard Insurance Co., 387 N.W.2d 642 (Minn. 1986), the court found that endorsements to a commercial policy covering sixty-seven vehicles were inconsistent and contradictory in expressing the limits of uninsured motorist coverage. The court declared that such ambiguities must be strictly interpreted against the insurer as long as the result of such construction is not "beyond the reasonable expectations of the insured." Id. *1321 at 645. The court found that the stacked coverage was within the reasonable expectation of the insured.
Similarly, in Horne v. United States Fidelity & Guaranty Co., 109 N.M. 786, 791 P.2d 61 (1990), the Supreme Court of New Mexico was confronted with a situation where an injured employee was attempting to stack uninsured motorist coverage under his employer's business auto policy. The court refused to begin with the premise that the employee was automatically deemed a class-two insured and instead looked to the policy for guidance. The rider defining the scope of uninsured motorist coverage defined a class-one insured as "you or any family member." The court found that this language created an ambiguity that must be resolved in favor of the employee:
"Because `you' and `your' refer to [the insured company] as a legal entity, the ordinary meaning of the phrase `[r]elatives living in your household' used in the policy is `manifestly absurd.' However, in the context of the policy as a whole, the phrase `[r]elatives living in your household' may be interpreted as referring to all employees of [the company], as referring to designated drivers only, or as a nullity. Therefore, the phrase is ambiguous and must be construed in favor of the insured."
Id. 791 P.2d at 62-63 (quoting King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380, 1384 (1988) (citations omitted)); see also White v. Georgia Casualty & Sur. Ins. Co., 520 So.2d 140 (Ala. 1987) (employee was class-one insured under language of employer's business auto policy and was thus allowed to stack).
Finally, at least one court has both rejected the class distinctions altogether and allowed stacking for anyone who is insured under the policy, regardless of the type of policy. In Harris v. Magee, 573 So.2d 646 (Miss. 1990), the Supreme Court of Mississippi addressed the question of whether an employee is permitted to stack uninsured motorist coverage under his employer's fleet policy. The court recognized that a majority of jurisdictions do not allow stacking under those circumstances, but rejected the premise in those decisions that such stacking exposes the insurer to a greater risk than contemplated by the premium actually paid. The court emphasized the lack of distinction in either the statutory scheme or case law between a commercial fleet policy and any other type of auto insurance policy. The court also distinguished Mississippi from other states (Alabama, Minnesota, and Montana) that have legislatively declared stacking to be contrary to public policy. Accordingly, the court held that the employee was entitled to stack the uninsured motorist benefits on his corporate employer's twenty-one vehicles. Id. at 655.
I am persuaded by these cases that the stacking issue in this context is not capable of a bright-line test. Obviously, a named insured or resident family member will always be permitted to stack. But whether other insureds under a policy should be permitted to stack should be decided on a case-by-case basis. The factors to be considered in assessing the appropriateness of stacking in any given case include the language of the insurance policy and any ambiguities therein; whether the policy is a commercial fleet policy and, if so, the size of the fleet; the relationship of the claimant to the named insured and the other vehicles covered under the policy; and any other circumstances relevant to the inquiry.
Under these criteria, I would find that stacking is appropriate in this case. I begin by noting that the policy at issue here does not involve a large commercial fleet, and in fact the declaration page even lists the specific eleven vehicles with the corresponding coverage and premiums. As in Horne, the policy defines a class-one insured in the uninsured motorist rider as "you or any family member," creating the same ambiguity.
In addition to the problem discussed by the court in Horne, this ambiguity illustrates the difficulty of our narrow Mullis *1322 definitions in the context of business auto policies. Under the Mullis definition of class one, only the named insured or a resident family member can stack uninsured motorist coverage. Because a corporation can neither drive nor have "family members," no one can stack for personal injuries, thus rendering the possibility of stacking a nullity. This result is at odds with the principle that an insured pays separate premiums for uninsured motorist coverage on each vehicle to ensure maximum protection in the event of injury due to the negligence of an uninsured motorist.
Moreover, an objective examination of Hurtado's relationship with his employer and the covered vehicles support the district court's conclusion "that Miranda purchased uninsured motorist insurance with the full knowledge that Hurtado would use the vehicle full time, and, just as a named insured purchases coverage to benefit family members, Miranda purchased insurance to benefit Hurtado." Hurtado v. Florida Farm Bureau Casualty Co., 557 So.2d 612, 614 (Fla.3d DCA 1990). While Hurtado is not the "named" insured or a "family member" of the corporation, he was not merely a passenger or a stranger to the insured vehicles, either. As a mechanic for Miranda, Hurtado was a permanent employee of the corporation who lived on corporate premises and was given a corporate vehicle to drive for both business and personal use. He was authorized to drive any of the other ten vehicles, and he had done so in the past. Logic and common sense compel the conclusion that Miranda purchased its automobile insurance at least partially for the benefit of Hurtado.
In rejecting this conclusion, the majority supports its position with the proposition that the stacking of uninsured motorist coverage causes the risk to the insurer to increase in geometric progression, and that accordingly, permitting class-two insureds to stack would necessitate "drastic premium increases." Majority op. at 11. However, the premium charged by insurers is calculated according to probabilities. The probability of every vehicle in a nineteen-vehicle fleet being involved in an accident with an uninsured motorist at the same time and each resulting in damages of $950,000 is remote at best. Thus, the necessity of "drastic" premium increases is questionable.
The majority also asserts that the denial of stacking does not result in a windfall to the insurer because "`[t]he coverage on the vehicle not involved in an accident remains in force,'" and thus "`the insured continues to get what he has paid for.'" Majority op. at 1316 (quoting Linderer v. Royal Globe Ins. Co., 597 S.W.2d 656 (Mo. Ct. App. 1980). However, this same rationale could be used to deny stacking for class-one insureds, and thus it does not support the majority's position that class-one and class-two insureds should be treated differently.
Pursuant to the policy considerations discussed above and in light of the circumstances presented here, I would permit Hurtado to stack the uninsured motorist benefits under his employer's business policy. Accordingly, I dissent from that portion of the majority opinion rigidly adhering to the Mullis class distinctions in the context of stacking uninsured motorist coverage.
KOGAN, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
[2] Section 627.4132, Florida Statutes (1987), provides:

627.4132 Stacking of Coverages prohibited.  If an insured or named insured is protected by any type of motor vehicle insurance policy for liability, personal injury protection, or other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section does not apply:
(1) To uninsured motorist coverage.
(2) To reduce the coverage available by reason of insurance policies insuring different named insureds.
[3] In 8C John A. Appleman & Jean Appleman, Insurance Law and Practice § 5101 (1981), the author criticizes the entire concept of stacking, even as to class one insureds. "It is time for those courts, which have been so generous with the funds of others, to take a new look at this problem." Id. at 451.