# Third District Court of Appeal

## State of Florida

Opinion filed February 22, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-689
Lower Tribunal No. 11-26813
_____

## Zurich American Insurance Company, a foreign corporation licensed to do business in the State of Florida,
Appellant,

vs.

## John Cernogorsky,
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Conroy Simberg and Hinda Klein, (Hollywood); McIntosh Sawran & Cartaya, and Douglas M. McIntosh and Kimberly Kanoff Berman (Fort Lauderdale), for appellant.

Law Offices of Hugh H. Bernstein, and Hugh H. Bernstein; Law Offices of William R. Jones, III, and William R. Jones, III; Jay M. Levy, for appellee.


Before WELLS, SALTER and LOGUE, JJ.

WELLS, Judge.

Zurich American Insurance Company appeals from a final judgment entered in favor of John Cernogorsky, the plaintiff below, after a jury trial on his claim for underinsured motorist ("UM") coverage under a business automobile liability policy issued to his employer, The Green Companies. Zurich claims that it was entitled either to a summary judgment or a directed verdict because coverage was a legal not a factual question, and because it was entitled to a judgment as a matter of law.[1] We agree and reverse.

**FACTS**

On February 18, 2011, Mr. Cernogorsky was injured when struck by an automobile while he was walking in front of The Green Companies' offices on the way into the building. The car that struck him was driven by an underinsured motorist. After Mr. Cernogorsky demanded and received payment up to the insurance policy limits ($100,000) of the motorist that struck him, he rejected the UM policy limits ($10,000) of his own insurance and sought UM coverage under The Green Companies' policy with Zurich.[2] On August 24, 2011, alleging that he

---

[1] Zurich also argues the trial court erred in denying its motion for a new trial because the jury was given a dictionary definition of statutory terms and because the court precluded it from introducing evidence of legislative history. We do not, however, address these points as it is not necessary to do so to resolve this matter.

[2] The record also reflects that Mr. Cernogorsky also applied for, and received, workers' compensation insurance benefits from his employer.

was injured as a pedestrian while in the course and scope of his employment with The Green Companies, Mr. Cernogorsky sued Zurich for $1,000,000 in UM benefits. The basis of Mr. Cernogorsky's claim for UM benefits was that: (1) he was a covered individual under The Green Companies' policy because the policy covered autos not owned by The Green Companies, which according to Mr. Cernogorsky included vehicles owned by employees; and, (2) the policy provided primary coverage which included UM coverage that extended to him because The Green Companies had failed to execute a UM coverage waiver as required by section 627.727(1) of the Florida Statutes.[3]

In response, Zurich argued that Mr. Cernogorsky was not entitled to UM benefits because: (1) he was not a named insured under the policy issued to The Green Companies; (2) the subject policy was not a primary liability auto insurance

[3] That statute provides, in relevant part:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein . . . . However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

§ 627.727(1), Fla. Stat. (2016); Tobin v. Mich. Mut. Ins. Co., 948 So. 2d 692, 694 (Fla. 2006) (stating that "[i]f an insurer fails to comply with the [provisions of section 627.727(1)], UM/UIM coverage is provided by contract as though the required coverage had been offered and accepted by the named insured as a matter of law").

3

policy, but an excess liability policy, and thus not governed by section 627.727(1), but by section 627.727(2) of the Florida Statutes[4] which does not require a written rejection of UM benefits; and (3) because Mr. Cernogorsky was a pedestrian at the time of the accident he could not recover UM benefits under this policy even had such coverage been provided.

Both Mr. Cernogorsky and Zurich moved for summary judgment, but both motions were denied and this matter was set for trial solely on the coverage issue. A jury thereafter rendered a verdict in Mr. Cernogorsky's favor determining that coverage existed. Zurich's renewed motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were denied. Zurich appeals, we reverse.

---

[4] The statute provides:

> The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.

§ 627.727(2), Fla. Stat. (2016).

## STANDARD OF REVIEW

We review the instant appeal from a final judgment interpreting the provisions of an insurance policy to determine coverage *de novo*. See Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (confirming that "a question of insurance policy interpretation, which is a question of law, [is] subject to de novo review"); Barcelona Hotel, LLC v. Nova Cas. Co., 57 So. 3d 228, 230 (Fla. 3d DCA 2011) (same). Where the facts are not in dispute and the language of an insurance policy is unambiguous and not subject to conflicting inferences, "its construction is for the court, not the jury." Ellenwood v. S. United Life Ins. Co., 373 So. 2d 392, 394-95 (Fla. 1st DCA 1979). Moreover, even where an ambiguity exists, if the facts are not disputed "it is within the province of the trial judge not the jury to resolve the ambiguity as a matter of law." See id.; see also Penzer, 29 So. 3d at 1005 ("'[A] provision is not ambiguous simply because it is complex or requires analysis. . . . . '[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms.'") (quoting Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007))). Here, because neither a factual dispute nor an ambiguity was demonstrated to exist, the coverage issue raised below should have been decided by the court below and on the record below, and for the following reasons, should have been resolved in Zurich's favor.

## ANALYSIS

5

First, Mr. Cernogorsky is not a named insured under the Zurich/Green Companies policy as he claimed below. This policy issued to The Green Companies is a package policy providing $1,000,000 in commercial general liability coverage to The Green Companies for "covered autos." This term, as identified in this policy, encompasses either "hired autos" or "nonowned autos." By definition, a "hired auto" covered by this policy is a vehicle leased, hired, rented or borrowed by The Green Companies. No such autos are involved in this matter. A "nonowned auto" as defined by this policy includes autos owned by employees, but only while they are being used for company business or "personal affairs" of The Green Companies:

> 9. Nonowned "Autos" Only
>
> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

Like "hired autos," no "nonowned" autos were involved in the incident that caused Mr. Cernogorsky's injury. In fact, Mr. Cernogorsky's vehicle was not involved in the incident at all. In short, no "covered autos" were involved in this matter, thereby utterly refuting Mr. Cernogorsky's claim that he was an insured under this policy by virtue of these provisions.

6

As the policy confirms, the only insured under this policy is The Green Companies. The Business Auto Coverage portions of the policy state that "the words 'you' and 'your' as used in the policy refer to the Named Insured shown in the Declarations." The insured named in the Business Auto Declarations is "THE GREEN COMPANIES INC (SEE NAMED INSURED ENDORSEMENT)." Not only is The Green Companies the only named insured in the policy, other portions of the policy also expressly exclude employees while using their own autos from the definition of the term "insured."

Specifically, the Designated Insured Endorsement, which expressly applies to the Business Auto Coverage Form, provides that "[e]ach person or organization shown in the Schedule [of Coverages and Covered Autos] is an 'insured' for Liability Coverage, *but only to the extent that person or organization qualifies as an 'insured' under the Who Is An Insured Provision contained in Section II of the Coverage Form."* (Emphasis added).[5]    Section II of the Business Auto

---

[5] This is wholly consistent with the definition contained in the Business Auto Coverage Form itself, which similarly defines an "insured" as one who is listed under the Who Is An Insured provision of the policy:

> **SECTION V – DEFINITIONS**
>
> . . . .
>
> G.  "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage.  Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or

7

Coverage Form in turn expressly excludes from the definition of the term "insured" any employee while driving his or her own vehicle:

**SECTION II – LIABILITY COVERAGE**

. . . .

**1. Who is an Insured**

The following are "insureds":

a.  You [The Green Companies] for any covered "auto."

b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . . .

(2) *Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.*

(Emphasis added).

In sum, these provisions confirm that only The Green Companies is insured under this policy for any liability that may arise from the use of a covered vehicle even if that vehicle is owned by an employee and is being used in company business.  Mr. Cernogorsky is not an insured under Zurich's policy.

Secondly, the policy at issue here is not a primary liability policy subject to the waiver of UM coverage mandate imposed by section 627.727(1) of the Florida Statutes as Mr. Cernogorsky claims.  The liability section of the Business Auto

---

against whom a claim or "suit" is brought.

Coverage Form provides that Zurich will pay "all sums an 'insured' [The Green Companies] must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto' ["hired autos" or "nonowned autos"]." However, that same provision also expressly excludes from such coverage bodily injury to an employee incurred during the course of his or her employment:

**SECTION II – LIABILITY COVERAGE**

. . . .

**B. Exclusions**

This insurance does not apply to any of the following:

. . . .

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

The Business Auto Coverage Form also expressly states that the coverage provided to autos "owned" by The Green Companies (there are none) is primary while coverage provided as to "nonowned autos" (which includes an employee's vehicle) is excess:

> **SECTION IV – BUSINESS AUTO CONDITIONS**
>
> The following conditions apply in addition to the Common Policy Conditions:
>
> . . . .
>
> **B. General Conditions**
>
> . . . .
>
> **5. Other Insurance**
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .

Since The Green Companies owns no vehicles, coverage, if it exists at all here, would relate to "nonowned" vehicles for which this policy provides only excess coverage.[6]

---

[6] As an excess policy, this policy provides coverage to The Green Companies for third-party claims for bodily injury or property damage caused by auto accidents in

Because the instant policy is an excess policy, there was no need for The Green Companies to execute a written waiver or rejection of UM coverage as required by section 627.727(1) of the Florida Statutes. Rather, and as section 627.727(2) of the Florida Statutes confirms, "[t]he provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle." § 627.727(2), Fla. Stat. (2016); see also Hampton v. Fla. Mun. Ins. Tr., 152 So. 3d 855, 856 (Fla. 4th DCA 2014) (finding the insurer "was not required to include uninsured motorist protection as part of its provisions" where the subject policy provided "excess insurance and not primary insurance for automobile accidents" and the insurer complied with section 627.727(2)); Nieves v. N. River Ins. Co., 49 So. 3d 810, 813 (Fla. 4th DCA 2010) ("A key amendment to section 627.727 occurred in 1984, when the legislature substantially rewrote

which a Green Company employee is driving his or her own vehicle while within the course and scope of his or her employment. See Tobin v. Mich. Mut. Ins. Co., 948 So. 2d 692, 697 (Fla. 2006) ("An 'other insurance' clause describes what occurs if other insurance coverage is available for the particular loss. It describes the application and relationship that arises if multiple insurance contracts apply to the same loss. See 8A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4909, at 70 (2005 Supp.). The 'other insurance' clause at issue in the present action provides excess coverage once the policy limits of other insurance covering the same risk are exhausted and is only intended to provide excess liability coverage to the "named insured," . . . .").

11

subsections (1) and (2), and 'for the first time explicitly exempted policies which did not provide primary liability insurance for specifically insured motor vehicles from the requirements set forth in subsection (1).'" (quoting O'Brien v. State Farm Fire & Cas. Co., 999 So. 2d 1081, 1087 (Fla. 1st DCA 2009))).

We therefore reject Mr. Cernogorsky's argument that even though the Zurich policy included no UM coverage provisions, that coverage nonetheless was available to him because The Green Companies had not executed a written waiver of UM coverage. The coverage provided by the Zurich policy was excess coverage not governed by section 627.727(1) which mandates a written UM waiver. Again, no coverage was available to him under this policy.

Finally, even if UM coverage were deemed available for failure to comply with the requirements of either section 627.727(1) or 627.727(2), Mr. Cernogorsky still would be unable to recover under the Zurich policy. UM benefits extend to both the insured named in the policy and resident family members, defined as class I insureds, and to others while passengers or drivers in an insured vehicle, defined as class II insureds. See Fla. Farm Bureau Cas. Co. v. Hurtado, 587 So. 2d 1314, 1317 (Fla. 1991) (confirming that UM benefits are available to two classes of individuals: "class one consisting of the named insured and resident family members; and class two consisting of those who are insured *only* because they are drivers or passengers in an insured vehicle with the consent of the named insured")

12

(emphasis added). Because Mr. Cernogorsky was neither a named insured under the Zurich policy nor a resident family member of an insured, he cannot be a class I insured. At best, he had to demonstrate that he was entitled to recover UM benefits as a class II insured. See Varro v. Federated Mut. Ins. Co., 854 So. 2d 726, 728 (Fla. 2d DCA 2003) ("When the named insured is a corporation, it obviously can never have a bodily injury or a UM claim as well as claims for coverage for family members. The entire risk in such a situation arises from class II insureds.").

As the Florida Supreme Court confirmed in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So. 2d 229, 233 (Fla. 1971), the seminal decision examining UM coverage, individuals may recover UM benefits as class II insureds only if they are lawfully occupying or driving a covered automobile:

> [Class II insureds] are protected only if they receive bodily injury due to the negligence of an uninsured motorist while they occupy the insured automobile of the named insured with his permission or consent. This latter group is necessarily restricted to occupants of the insured automobile for the purpose of coverage identification and to show their insurable relationship to the named insured paralleling coverage for others than named insured in automobile liability policies.

See also Travelers Ins. Co. v. Warren, 678 So. 2d 324, 326 n.2 (Fla. 1996) ("[C]lass II insureds are lawful occupants of the insured vehicle who are not named insureds or resident relatives of named insureds."); Hurtado, 587 So. 2d at 1318-19 ("Class-one insureds are covered regardless of their location when they are injured

13

by an uninsured motorist. . . . On the other hand, coverage for class-two insureds is limited to occupancy in the insured vehicle."); Alamo Rent-A-Car, Inc. v. Hayward, 858 So. 2d 1238, 1240 n.1 (Fla. 5th DCA 2003) ("Class II insureds include all other passengers in the vehicle who are covered only by virtue of the fact that they occupy the covered vehicle."); Bulone v. United Servs. Auto. Ass'n, 660 So. 2d 399, 400 n.1 (Fla. 2d DCA 1995), approved, 679 So. 2d 1185 (Fla. 1996) ("Class II includes persons occupying an insured vehicle. These passengers do not pay for this uninsured motorist coverage, but receive its protection, essentially as third-party beneficiaries to the family policy, because a family member permitted them to occupy the family car.").

It is undisputed that at the time of the incident at issue here, Mr. Cernogorsky was neither driving nor occupying any vehicle. He could not, therefore, secure UM benefits as a class II insured under this policy. See State Farm. Mut. Auto. Ins. Co. v. Bailey, 203 So. 3d 995, 998 (finding an employee was not entitled to UM coverage under a business automobile insurance policy because he was not "occupying" the employer's vehicle at the time of the accident as set forth in the policy's UM endorsement); Davis v. Fireman's Fund Ins. Co., 463 So. 2d 1191, 1192 (Fla. 2d DCA 1985) (finding a tow truck operator who was struck while changing a tire on a disabled vehicle was not entitled to UM benefits under a business automobile policy insuring the tow truck because he was not

14

"occupying" the tow truck at the time of the accident, as required by the UM policy language); State Farm Mut. Auto. Ins. Co. v. Yanes, 447 So. 2d 945, 946 (Fla. 3d DCA 1984) (finding an employee was not entitled to UM coverage under a business automobile policy because he was not "occupying" the employer's vehicle at the time of the accident as required by the policy's UM provisions).

Because Mr. Cernogorsky was neither an insured under the Zurich/Green Companies policy nor otherwise eligible to recover benefits thereunder, the judgment below must be reversed with this matter remanded for entry of judgment in Zurich's favor.

Reversed and remanded with instructions.