527 So.2d 228 (1988)
The GLENS FALLS INSURANCE COMPANY, Appellant/Cross Appellee,
v.
Millicent RUSSELL and the Estate of Richard Russell, Appellees/Cross Appellants.
No. 4-86-0417.
District Court of Appeal of Florida, Fourth District.
May 18, 1988.
Rehearing Denied July 22, 1988.
*229 Rosemary Wilder and Richard A. Sherman of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, for appellant/cross appellee.
R. Fred Lewis of Magill & Lewis, P.A., Miami, for appellees/cross appellants.
BLOOM, PHILIP, Associate Judge.
This case concerns a dispute relating to insurance coverage over an accident involving an uninsured motorist. The insured, Thomas Amoury, maintained his insurance policies with Glens Falls Insurance Company.
Amoury loaned his automobile to appellees, Mr. and Mrs. Richard Russell, as permissive users. They were involved on September 29, 1983, in an automobile accident which resulted in the death of Mr. Russell and in injury to Mrs. Russell. The insured, Amoury, had $100,000 of uninsured motorist (UM) coverage and the tort-feasor in the accident had $100,000 of liability coverage. The amount of coverage available to the Russells was put in issue because the insured, Amoury, also had an umbrella policy of $1 million with primary protection of $500,000.
It was not until September 7, 1983, several years after his purchase of the umbrella policy, that Amoury was specifically advised by his carrier that he could obtain uninsured motorist protection within the limits of his umbrella policy and that his $100,000 uninsured motorist policy could be increased. Without proper notification of such offer of UM coverage on the excess policy, an insured is entitled to the liability insurance as uninsured motorist coverage. § 627.727(1), Fla. Stat. (1983); First State Insurance Company v. Stubbs, 418 So.2d 1114 (Fla. 4th DCA 1982).
The court below found there were two separate insurance policies issued, i.e., the original policy of $100,000 for uninsured motorist protection and the umbrella policy of $500,000/$1,000,000, and we cannot disturb that finding. The court initially held that there was $100,000 of uninsured motorist coverage on the original policy and $1 million on the excess coverage and sought to close the $400,000 "gap" between those policies, with total UM coverage to $1.5 million. Thereafter, an amended final judgment was entered finding $100,000 UM coverage on the original policy and the umbrella policy commencing without gap at $100,000, thereby giving continuous coverage from $100,000 to $1.1 million.
At issue here is the nature of the notice imparted to the insured and whether that notice complies with statutory informational requisites. It should be noted that the usual role of a trial court is not to legislate when the legislature has not acted. Rather, the trial court's role is to interpret the statute, resolve conflicts in the evidence and be fair in the application of the statute to the facts.
In the instant case, it is virtually conceded that, insofar as the umbrella policy is concerned, the notice to the insured of his options as to UM coverage under section 627.727(1) was not appropriate. Accordingly, the uninsured motorist protection available to Amoury (and therefore to the Russells) was equal to the liability coverage on the umbrella policy.
*230 In First State Insurance Company v. Stubbs, 418 So.2d 1114, 1115-16 (Fla. 4th DCA 1982), this court stated:
We cannot agree, however, with the trial court's determination of First State's bottom limit of liability, i.e., $10,000. Section 627.727(1), Florida Statutes (1971), required First State to include uninsured motorist coverage in limits no less than the liability limits, unless rejected by the insured. Since First State failed to comply with the statute, the trial court appropriately employed the remedial device of construing the policy to provide uninsured motorist coverage. But the court erred by requiring First State to shoulder a heavier burden than would have been imposed by the statute in the first instance. First State's excess policy provided a bottom limit of $100,000 for bodily injury coverage. Yet the trial court went below this figure and established a $10,000 base. We think this was incorrect. First State's uninsured motorist coverage is coextensive with its liability coverage and, therefore, we hold that First State's excess indemnity policy provides uninsured motorist coverage for any damages sustained by Mr. Stubbs over and above $100,000.
See also Stonewall Insurance Company v. Heter, 438 So.2d 950 (Fla. 4th DCA 1983).
Here, the umbrella policy had an express lower limit of $500,000 and, as in Stubbs, the trial court erred in finding UM coverage below that lower limit in order to close a gap. It is clear that the trial court attempted to apply the statute to the facts in an equal-handed manner but which, in effect, discriminated against the carrier beyond the requirements of the statute by imposing a far heavier burden upon the carrier than would be fair or just under the circumstances of this case and the applicable law.
Accordingly, the trial court's Order Amending Final Judgment, dated February 18, 1986, is reversed. The trial court's original Final Judgment For Defendants, dated November 21, 1985, is hereby reinstated and modified with $100,000 of uninsured motorist protection as a result of Amoury's original policy and $1 million of uninsured motorist protection as a result of the umbrella policy on liability, commencing at $500,000.
GLICKSTEIN and STONE, JJ., concur.