OPINION OF THE COURT
Ralph Yachnin, J.
This application, made by notice of petition, undated but originally returnable by its terms on January 9, 1995, for an order, pursuant to CPLR 7503 (c), staying uninsured motorist arbitration demanded by respondent, is disposed of as follows: The first issue revolves around the timeliness of the present application. Respondent maintains that this special proceeding was not commenced within the 20 days provided for by statute. CPLR 7503 (c) provides, inter alia, that "[a]n application to stay arbitration must be made by the party served [with a demand for arbitration or a notice of intention to arbitrate] within twenty days after service upon him of the notice or demand, or he shall be so precluded.”
The respondent’s demand for arbitration (demand), dated November 8, 1994, was served by certified mail, return receipt requested, on November 10, 1994. This is evidenced by the postmark on the envelope in which it was sent[1] and by the receipt for certified mail.[2] The demand was sent to petitioner at 55 Sunrise Highway, Lynbrook, New York, and there is no *901 denial that the same was received by Avis Rent-A-Car System, Inc. (Avis) at that location.
Petitioner’s present application was commenced on December 9, 1994, more than 20 days after service of the demand on November 10, 1994.[3]
Petitioner’s application was not timely made, unless, as petitioner suggests, the initial service was not proper. Petitioner maintains that respondent improperly mailed the demand to petitioner’s rental office, rather than to petitioner’s claims department or its corporate insurance department in Garden City, New York, or to the claim handler, Bill McDermott, in Fort Lauderdale, Florida. In a conference among counsel and the court’s law secretary, Robert S. Caine, Esq., held on March 13, 1995, counsel agreed that the insurance policy does not contain a provision indicating where service of the demand should have been made. The papers submitted reflect that the rental agreement between petitioner and respondent was entered into at the address to which the demand was mailed and at which the subject vehicle was picked up and to be dropped off.
Petitioner maintains that the 20-day period provided for by the statute for the making of an application to stay arbitration should commence running on the date on which the demand was received by petitioner’s claims department, not by its rental office. Indeed, petitioner points out, the demand itself, albeit in tiny printing, states: "(Send the original to the party upon whom the demand is made. When filed by an insured, the original shall be directed to the claim office of the insurer under whose policy arbitration is sought, either the office where the claim has been discussed or the office closest to the residence of the insured.)”[4] That somewhat confusing language, however, is part of the form but not provided for in the statute, the policy or the leasing agreement. Petitioner maintains that in the Nassau County telephone book there is a "separate listing for Avis World Headquarters (including a number for insurance) at 900 Old Country Road, Garden City, New York”; however, there is no allegation or showing that included in the directory is a telephone number for an Avis claims department. Moreover, one in respondent’s position should not be bound by a listing in a telephone book.
*902 More to the point, the burden of providing for the place to send claims is upon the petitioner. Petitioner, a self-insurer, prepared the policy, and petitioner prepared the agreement. Not having provided to the contrary, petitioner can hardly complain that respondent served the demand at a reasonable location — the place where she rented the vehicle, signed the contract, picked up the vehicle, and to which she was to return the vehicle. After all, the rental agreement is replete with conditions imposed by petitioner, and it would have been easy to provide that all claims against petitioner were to be made to a specific place. This was not done.
Petitioner claims that there is "no possible way that Avis could have notice of this demand for arbitration within the twenty (20) day period, if it was forwarded to the Avis Lynbrook rental location.”[5] This is plainly not so. Documents are sent overnight all over this country. Documents are delivered same day service throughout the metropolitan area. Documents are also faxed between offices.
Petitioner cites Matter of Metropolitan Prop. & Liab. Ins. Co. v Boisette (105 AD2d 785 [2d Dept 1984]) in support of its claim that the demand was not mailed to the right place; however, such case is not on point. There the notice of intention to arbitrate was mailed addressed to the wrong company name and sent to still another company’s office. When received, it was finally redirected to the right company, too late to make a timely application for a stay. Therefore, the court held that the petitioner insurance company was not barred from bringing a petition to stay arbitration.
Petitioner has also cited a 1970 case, Matter of Empire Mut. Ins. Co. v Levy (35 AD2d 916 [1st Dept]), in which the respondent’s attorney had been communicating with the insurer’s New York office and was aware that the matter was being handled there. Under the law when the Empire case was decided, a petitioner had only 10 days, not 20, within which to move to stay arbitration. Moreover, communication among offices was not as easy as it is today. The clear implication of that case is that the court was saying that the respondent’s attorney intentionally sent the notice to an outlying office of the carrier in order to bar the insurer from making the very application which it ultimately made. This, the court held, was improper.
The circumstances in the present action are not the same as *903 in Empire (supra). There was no reason here for respondent’s counsel to suspect that the demand should be sent to a Florida claims person employed by a different company, "SCS & Associates, 3215 Northwest 10th Terrace, Fort Lauderdale, Florida”.[6]
In view of the foregoing, this court holds that petitioner’s application is not timely.
Petitioner also maintains that there is no contract providing for arbitration of respondent’s claim.
Petitioner is a self-insurer licensed as such in New York State. The subject vehicle was rented to respondent in New York State and thereupon dHven to the State of Florida, where an accident involving the vehicle took place. Respondent claims to have been injured as a result of the accident. Respondent maintains that the other vehicle vas "unidentified and allegedly a stolen vehicle”.[7] There seems to be no dispute that petitioner issued a motor vehicle liability insurance policy.
The uninsured motorist endorsement to the subject policy provides: "Territory: This endorsement applies only to accidents which occur within the State of New York.” Therefore, petitioner postures, since the accident occurred outside New York, petitioner has no liability.
Petitioner also cites Matter of American Tr. Ins. Co. v Abdelghany (80 NY2d 162 [1992]) for the proposition that since New York policies are "deemed to include the minimum uninsured motorist coverage required under the state where the accident occurred and inasmuch as Petitioner maintains that Florida does not require such coverage, Petitioner’s policy need not and does not provide same.”[8]
The Court of Appeals itself in American Tr. (supra) set forth its holding in plain language: "we hold that New York law requires insurers to provide the minimum uninsured motorist coverage prescribed by the laws of the State in which the accident occurred. The purpose of Insurance Law § 5103 (e) is to protect New York insureds by assuring that, notwithstanding any New York law to the contrary, the minimum insurance coverage required under the laws of the situs of the accident will apply.” (Supra, at 169; emphasis supplied.)
*904 Florida law provides in Florida Statutes § 627.727, in pertinent part, as follows:
"(1) No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes written rejection of the coverage on behalf of all insureds under the policy * * * The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limit unless lower limits are requested or the coverage is rejected * * *
"(2) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured.”[9]
Petitioner maintains that respondent waived the Florida uninsured motorist coverage because included in the rental agreement is the following language: "I understand that unless required by applicable law, you will not provide * * * (B) coverage for bodily injury to, or death of, myself while not a driver * * * (C) * * * non-compulsory uninsured or underinsured motorist coverage, and any other optional or rejectable coverage, and you and I reject all such coverages to the extent permitted by law.” Clearly, this rejection is not binding insofar as Florida coverage is concerned, as there can be no doubt that the rejection must be made in accordance with the Florida statute, a circumstance not present here.
Petitioner contends that the Florida case of Diversified Servs. v Avila (606 So 2d 364 [1992]), decided by Florida’s highest court, the Supreme Court of Florida, holds that Florida Statutes § 627.727 (1) does not apply to petitioner, a self- *905 insurer. That court specifically stated that its holding therein is "that section 627.727 (1) does not require self-insured automobile leasing companies to offer uninsured motorist coverage to its lessees for leases that are less than one year in duration.”[10] The Diversified case (supra) appears to revolve around a rental agreement whereby Mr. Avila rented from "Diversified Services, Inc., a foreign corporation, d/b/a Budget Rent-A-Car of Miami, Inc. (Budget), a Florida corporation, on May 25, 1984.” (606 So 2d, at 364, supra; emphasis added.) Avila was killed in the accident and his representative sued Budget alleging entitlement to uninsured motorist benefits. It seems clear from the decision that the subject vehicle there was rented from a Florida location by a Florida resident. The court there pointed out that "[S]ection 627.727 (1) requires that uninsured motorist coverage be offered in two instances: 1) when a motor vehicle liability insurance policy is issued; and 2) when a motor vehicle is leased for a period of 1 year or longer and the lessor of such vehicle, by the terms of the lease contract, provides liability coverage on the leased vehicle.” (606 So 2d, supra, at 365.) As noted above, in the present case, petitioner did issue a motor vehicle liability insurance policy.
The Florida court’s holding that a self-insurer is not required to provide uninsured motorist coverage to its lessees is based not only on the fact that no policy was issued but also and most importantly on the conclusion that "providing compliance through self-insurance is not the same as issuing a 'motor vehicle liability policy’; therefore, section 627.727 is not applicable. Nor does Budget’s status as a self-insurer make it an 'insurer’ under the Florida Insurance Code.”* [11] (606 So 2d, at 366, supra.)
Under New York law, a self-insurer, which is what petitioner concedes it is, is considered to be an "insurer”. Insurance Law § 5102 (g) so provides: " 'Insurer’ means the insurance company or self-insurer, as the case may be, which provides the financial security required by article six or eight of the vehicle and traffic law.”[12]
Our Court of Appeals has instructed that New York State insurers, such as petitioner, must provide the minimum unin *906 sured motorist coverage prescribed by the laws of the State of the accident situs. Indeed, Insurance Law § 5103 (e) specifically states "(e) Every owner’s policy of liability insurance issued in satisfaction of article six or eight of the vehicle and traffic law shall also provide, when a motor vehicle covered by such policy is used or operated in any other state or in any Canadian province, insurance coverage for such motor vehicle at least in the minimum amount required by the laws of that state or province.”
Here, the petitioner’s argument goes, since the Florida Supreme Court has decreed that self-insurers do not have to provide any uninsured motorist coverage, petitioner is not required to give such coverage to respondent.
Based on the definition provided in New York’s Insurance Law, quoted above, this court finds that it was the Legislature’s and the Court of Appeals intent that reference be made to the foreign State’s statute for guidance and not make coverage dependent on the kind of domestic insurer involved. Respondent’s rights under the policy, and those of anyone in the same position as respondent, should not be made dependent on petitioner’s status, especially when the consequences thereof could hardly be known by renting an automobile. As stated at the end of the penultimate paragraph of the American Tr. case, the "salutary concept of section 5103 (e)” was to "[look] to the laws of other jurisdictions if those jurisdictions require 'different, and perhaps higher, minimum liability levels’ (Country-Wide Ins. Co. v Rodriguez, 55 NY2d 162, 167, supra). ” (Supra, 80 NY2d, at 169.)
Petitioner’s application for a stay of arbitration is denied.

. Part of petitioner’s exhibit A to petition.

. Part of respondent’s exhibit A.

. This is evidenced by respondent’s exhibit B, an envelope showing the postmark as December 9, 1995.

. Part of exhibit A to petition.

. Cernitz affirmation, Jan. 3,1995, at 2, ¶ 2.

. Petition, 4.

. Petition, ¶ 11.

. Cernitz affirmation, Dec. 6, 1994, ¶ 3.

. Exhibit A to Cernitz affirmation, Jan. 3, 1995.

. Exhibit annexed to Cernitz affirmation, Mar. 1, 1995.

. A copy of the Supreme Court of Florida’s decision in the cited case is annexed as exh to Cernitz affirmation, Mar. 1, 1995.

. Article 6 of the Vehicle and Traffic Law is commonly known as the Financial Security Act. Article 8 is irrelevant to the issues in this case.