816 So.2d 140 (2002)
Miriam Nancy FERREIRO, Appellant,
v.
PHILADELPHIA INDEMNITY INSURANCE COMPANY, Appellee.
No. 3D01-2365.
District Court of Appeal of Florida, Third District.
April 3, 2002.
Rehearing and Certification Denied May 29, 2002.
Victor Careaga; Angones, Hunter, McClure, Lynch, Williams & Garcia and Steve Hunter and Christopher Lynch, Miami, for appellant.
Conner & Winters (Tulsa, Oklahoma); Hightower & Rudd; Hicks, Anderson & Kneale and Mark Hicks, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and SORONDO, JJ.
Rehearing En Banc and Certification Denied May 29, 2002.
SCHWARTZ, Chief Judge.
When Mrs. Ferreiro, an Argentine citizen, rented a car from Budget-Rent-A-Car in Miami, she purchased an optional "Rental Supplemental Liability Insurance Excess Policy"[1] from Philadelphia Indemnity Insurance Company, in which she was the insured and which provided $1,000,000 limits of liability insurance. Although section 627.727(2), Florida Statutes (1997) specifically provides that
[a]n insurer issuing [an excess motor vehicle policy] shall make available as a part of the application for such policy, and at the written request of an insured, limits [of UM coverage] up to the bodily injury liability limits contained in such policy or $1 million, whichever is less *141 no uninsured motorist benefits were made available to her and the written policy (with which she was not provided) indeed specifically excluded them. Unfortunately, soon after she rented the vehicle, Mrs. Ferreiro was seriously injured in an accident with an uninsured motorist and brought this declaratory action claiming the right to UM coverage because of Philadelphia's violation of the statute. The trial judge found for the insurance company but we reverse.
Our conclusion is based simply upon the clear requirements of the statute, which apply directly to the present set of facts, and a long, uninterrupted chain of Florida cases which say that the failure of any motor vehicle insurer, specifically including an excess or even an umbrella carrier, to abide by pertinent statutory requirements concerning offers or provisions of UM protection results in its being held to that coverage. Strochak v. Federal Ins. Co., 717 So.2d 453 (Fla.1998); Travelers Ins. Co. v. Quirk, 583 So.2d 1026 (Fla.1991); Weesner v. United Servs. Auto. Ass'n, 711 So.2d 1192 (Fla. 5th DCA 1998), review denied, 727 So.2d 914 (Fla.1999); Glens Falls Ins. Co. v. Russell, 527 So.2d 228 (Fla. 4th DCA 1988); Cohen v. American Home Assurance Co., 367 So.2d 677 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 342 (Fla.1979).
The carrier contends and the trial judge held, however, that the fact that, as a self-insured rental company, Budget was not required, under section 627.727(1) to offer or provide primary UM coverage on the short term rental, see Diversified Servs., Inc. v. Avila, 606 So.2d 364 (Fla. 1992), negates the section 627.727(2) obligation of the carrier to offer that coverage. We totally disagree. Indeed, because the one thing simply has nothing to do with the other, see Diversified, 606 So.2d at 364-66; Avis Rent-A-Car Sys., Inc. v. Mitchell, 164 Misc.2d 899, 626 N.Y.S.2d 401 (N.Y. Sup. Ct. 1995) (applying § 627.727 and Diversified Services, Inc. v. Avila), we find nothing whatever to recommend this contention.[2] It is well settled that excess coverage may arise by statutory requirement, even when no underlying or primary UM coverage exists at all. See Sirantoine v. Illinois Employers Ins., 438 So.2d 985 (Fla. 3d DCA 1983)(excess carrier required to offer UM even though insured has specifically rejected primary UM); Aetna Casualty & Surety Co. v. Green, 327 So.2d 65 (Fla. 1st DCA 1976), cert. denied, 336 So.2d 1179 (Fla. 1976)(same). In any event, the statute provides for no such exception and requires, particularly in view of the often expressed Florida public policy in favor of UM coverage, see Mullis v. State Farm Auto. Ins. Co., 252 So.2d 229 (Fla.1971), that that protection be provided here. We so hold.
Reversed.
NOTES
[1] The policy was a part of an entire package of "extra protection" she purchased, including optional personal accident and effects coverage, and optional collision coverage.
[2] As we see it, the two provisions are not only not mutually repugnant, but entirely consistent. This is because the renter will ordinarily have primary UM coverage of her own, which would meld perfectly with the excess required to be offered by any would-be excess carrier. The fact that Mrs. Ferreiro, as a foreign national, had no UM (or liability) coverage herself does not detract from, indeed, may actually increase the importance of her being given the chance (which she would have likely taken, see supra n. 1) to purchase that protection.