WARNER, J.
The issue presented in this case is whether an excess insurer has satisfied the terms of section 627.727(2), Florida Statutes, requiring an excess carrier to “make available” uninsured motorist protection, when it notifies the insured that excess UM coverage is available without charge, conditioned on the insured’s purchase of uninsured motorist protection in its primary policy. We hold, as did the trial court, that the excess insurer has complied with the statute. We thus affirm.
This declaratory judgment action emanated from a wrongful death action *812 brought by Ana Nieves, as personal representative of the Estate of Joaquin Nieves, her husband who was killed in an automobile accident after being struck by another vehicle. At the time of the accident, Mr. Nieves was operating a vehicle owned by his employer, Megatran, Inc. The vehicle was insured under a primary commercial automobile policy issued by Liberty Mutual, which did not provide uninsured/under-insured motorist coverage. The vehicle was also insured under a commercial umbrella policy issued by defendant North River Insurance Company.
Following the accident, Nieves made a claim for UM/UIM coverage under the North River umbrella policy. The North River policy contains an endorsement entitled “Important Notice,” which pertains to excess UM/UIM coverage and provides as follows:
To Our Florida “Umbrella” Policyholders:
Section 627.727 Florida Statutes requires that we give you the option of purchasing Uninsured Motorist coverage under this policy up to a maximum limit of $1,000,000 each occurrence. This coverage would apply in EXCESS of the Uninsured Motorist limit provided by your primary automobile liability policy.
We have included this $1,000,000 EXCESS Uninsured Motorist coverage in this policy at no additional cost to you. But in order for it to become effective you must purchase a PRIMARY Uninsured Motorist limit of $1,000,000 in your automobile liability policy which must apply to all owned or operated motorized automobiles.
If primary Uninsured Motorist coverage in the amount of $1,000,000 is not maintained in your automobile liability policy Uninsured Motorist coverage is EXCLUDED by this policy.
North River denied the plaintiffs claim for UM/UIM coverage under the North River policy, relying on the above endorsement, because Megatran had not purchased UM coverage in its primary policy.
Nieves filed a declaratory action seeking a declaration that North River’s denial of coverage violated section 627.727(2), Florida Statutes. She further sought an order reforming the North River policy to provide UM/UIM coverage in the amount of $1 million. North River moved to dismiss the complaint on the grounds that it did not state a cause of action for a violation of section 627.727(2). North River argued section 627.727(2)’s requirement that coverage be made available to policyholders required only that North River offer UM/ UIM coverage. It claimed that it complied with the statute by offering UM/UIM coverage at no additional cost, with the condition that the policyholder must purchase a primary UM/UIM policy.
Following a hearing on the motion to dismiss, the trial court granted North River’s motion without prejudice to the plaintiff amending the complaint. After Nieves chose not to amend the counts against North River, the trial court entered a final judgment of dismissal in favor of North River. This appeal follows.[1]
Because the issue in this case is a question of law involving statutory interpretation, this court’s review is de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006). “A court’s purpose in eonstru- *813 ing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Larimore v. State, 2 So.3d 101, 106 (Fla.2008). However, “[w]hen the statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005).
The dispute in this case centers around section 627.727(2)’s requirement that an excess insurer “shall make available” excess UM/UIM coverage to policyholders. Section 627.727, Florida Statutes (2006), provides that every automobile liability policy provide UM/UIM coverage for the protection of the policy insureds in an amount not less than the liability limits of the policy, unless the insured specifically rejects such coverage in writing. Because an excess insurance policy may also insure the automobile, the legislature created a specific rule applicable to excess policies. It provides:
(2) ... The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.
§ 627.727(2), Fla. Stat. (2006).
As a remedial statute, section 627.727 is to be broadly and liberally construed. Ferrigno v. Progressive Am. Ins. Co., 426 So.2d 1218, 1219 (Fla. 4th DCA 1983). The uninsured motorist statute “was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be ‘whittled away by exclusions and exceptions.” Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla.1971). Thus, provisions in uninsured motorist policies that provide less coverage than required by the statute are void as contrary to public policy. Young v. Progressive Se. Ins. Co., 753 So.2d 80, 82 (Fla.2000).
A key amendment to section 627.727 occurred in 1984, when the legislature substantially rewrote subsections (1) and (2), and “for the first time explicitly exempted policies which do not provide primary liability insurance for specifically insured motor vehicles from the requirements set forth in subsection (1).” O’Brien v. State Farm Fire & Cas. Co., 999 So.2d 1081, 1087 (Fla. 1st DCA 2009); see also Ch. 84-41, § 1, at 95-96, Laws of Fla. In discussing the legislative history of section 627.727, the O’Brien court cited to the House of Representatives’ Final Staff Analysis, which explains that subsection (2) exempts “excess or umbrella-type policies” from the “written rejection” requirements of subsection (1). However, the excess insurer still must notify its insured of the availability of such coverage. See Tres v. Royal Surplus Lines Ins. Co., 705 So.2d 643, 645 (Fla. 3d DCA 1998).
Under section 627.727(2), an excess insurer’s only duty with respect to its offer of uninsured motorist coverage is to ‘make available as a part of the application for such policy, and at the written request of an insured,’ uninsured motorist coverage in an amount equal to the bodily injury limits contained in the policy or one million dollars.
*814 O’Brien, 999 So.2d at 1083. Here, North River complied with its obligation under section 627.727(2) to “make available” excess UM/UIM coverage to the insured. Merriam-Webster’s Dictionary provides one definition of the word “offer” is “to make available.” See Merriam-Webster Online Dictionary (2010), available at http://www.merriam-webster.com/ dictionary/offer. Thus, the appropriate interpretation of section 627.727(2)’s requirement means simply that the excess insurer must offer the insured an opportunity to obtain UM/UIM coverage.
Nieves contends, however, that when the statute requires that the excess insurer make coverage available, it must unconditionally offer such insurance, without requiring the purchase of underlying UM/ UIM coverage. We disagree. Nowhere does the statute set forth any required terms, other than the excess insurer must offer the amount of the liability coverage or $1 million in UM/UIM coverage. At oral argument Nieves conceded that North River could require payment for such coverage, and the payment would not violate the statute. In this case, North River made an offer to provide excess UM/UIM coverage at no cost, conditioned upon the insured’s purchase of underlying UM/UIM coverage. We see no legal difference between the two. Moreover, if there were no underlying coverage for UM/UIM, Nieves seeks to turn the excess liability carrier into the primary carrier for this purpose, something which would significantly alter the relationship between the insured and excess insurer.
Nieves relies on Ferreiro v. Philadelphia Indent. Ins. Co., 816 So.2d 140, 141 (Fla. 3d DCA 2002). We find that case, as well as those on which it relies, distinguishable. In Ferreiro, where an insured purchased excess liability coverage on her rental vehicle and was subsequently injured in an accident, the court held that the excess insurer was obligated to provide UM/UIM coverage pursuant to the terms of section 627.727(2), even though the car rental company was not required to provide the underlying UM/UIM coverage. Unlike this case, however, the insured in Ferreiro was never offered the excess UM/ UIM coverage. Thus, the insurer clearly violated the statute in failing to make the offer of such insurance to the insured. Here, on the other hand, the insurance company offered excess UM/UIM coverage to its insured, who simply elected not to accept it under the terms offered.
To summarize, we hold that where an excess insurer agrees to provide to the insured excess UM/UIM coverage in the amount required under section 627.727(2), Florida Statutes, upon the condition that the insured purchase UM/UIM coverage under its primary policy of limits equal to the amount offered in excess coverage, the excess insurer has complied with its statutory obligation. We thus affirm the trial court.
POLEN and LEVINE, JJ., concur.

. We note that dismissal of the complaint was not the appropriate action, as a party is entitled to a declaration of its rights, even when the declaration is against her interest. See, e.g., X Corp. v. Y Person, 622 So.2d 1098, 1101 (Fla. 2d DCA 1993). However, Nieves has not argued against the dismissal on this ground, and the ground of the court's ruling is not in doubt.