[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10476
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-23201-KMW


MARIA THERESA GUANIRO ZAMORA,
ALEX TANTALEAN,
CECILIA DELGADO,
SONIA CARRANZA,

Plaintiffs - Appellants,

versus

ACE AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 23, 2020)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

This appeal arises out of a car rental.  Maria Theresa Guaniro Zamora, an Alamo Rent-A-Car customer, purchased an insurance policy from Ace American Insurance Company.  Zamora's policy included $100,000 of excess uninsured/underinsured motorist (UM) coverage that had been issued by Ace to the named insured, Enterprise Holdings, Inc.  Zamora rejected additional excess UM coverage beyond the limits set forth in Enterprise Holdings' policy with Ace.

Florida Statute § 627.727(2) requires insurers to "make available . . . limits [of excess UM coverage] up to the bodily injury liability limits contained in such policy or $1 million, whichever is less."  After an uninsured/underinsured motorist and Zamora were involved in an accident resulting in serious injuries, Zamora demanded payment.  Ace responded that only $100,000 in excess UM coverage was available.

The question on appeal is whether Ace complied with § 627.727(2).  The district court granted Ace's motion for summary judgment and denied Zamora's, holding that Ace complied with § 627.727(2) because: (1) Ace offered excess UM coverage to its named insured, Enterprise Holdings, and (2) the rental car customer, Zamora, signed a rental agreement accepting the terms of Enterprise Holdings' excess UM coverage.  On appeal, Zamora contends that the district court erred because (1) Enterprise Holdings was not the purchaser or renter of the vehicle and had no "insurable interest," and (2) § 627.727(2) required Ace to make

2

excess UM coverage available to Zamora.  After a review of the record, we affirm.[1]

## I

To determine whether Ace complied with § 627.727(2), we must address two distinct but related questions: (1) whether Ace made excess UM coverage available to Enterprise Holdings, the named insured, and (2) whether, assuming it had an obligation to do so, Ace made excess UM coverage available to Zamora, the customer.

## A

"Section 627.727, Florida Statutes, governs the extent to which motor vehicle liability insurance policies delivered or issued for delivery in Florida must make uninsured motor vehicle coverage available." *O'Brien v. State Farm Fire & Cas. Co*., 999 So. 2d 1081, 1083 (Fla. Dist. Ct. App. 2009).  Neither party disputes that § 627.727(2) is the applicable provision of the statute here:

> [A]n insurer issuing [an excess motor vehicle] policy shall make available as a part of the application for such policy, and at the written request of an insured, limits [of excess UM coverage] up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.

---

[1] We review the district court's decision to grant summary judgment *de novo*.  *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005).

Florida courts have interpreted "make available" in § 627.727(2) as meaning "to offer," and we agree. *See Nieves v. N. River Ins. Co.*, 49 So. 3d 810, 814 (Fla. Dist. Ct. App. 2010).

Enterprise Holdings, faced with (1) completely rejecting excess UM coverage, (2) selecting $100,000 of coverage, or (3) selecting $1,000,000 of coverage, made the second choice. Zamora nonetheless argues, for several reasons, that Enterprise Holdings could not properly accept the excess UM coverage offer within the meaning of § 627.727(2).

First, Zamora argues that § 627.727(2)'s text requires "insurers to offer or inform the *purchaser* of a policy (that will become binding and effective) of the availability of UM coverage[.]" Br. of Appellant at 19 (emphasis added). Because Zamora—not Enterprise Holdings—was the purchaser or renter of the vehicle, Zamora argues, Ace did not comply with § 627.727(2). But § 627.727(2) doesn't use the terms "purchaser" or "renter," and Zamora hasn't identified any specific portion of § 627.727 that supports this restrictive interpretation of § 627.727(2). As the district court noted, several Florida courts have recognized rental car agencies' right to reject UM coverage on behalf of other insureds under the policy. *See, e.g.,*

*Diversified Servs., Inc. v. Avila*, 606 So. 2d 364, 366–367 (Fla. 1992); *Kohly v. Royal Indem. Co.*, 190 So. 2d 819, 822 (Fla. 3d DCA 1966).[2]

Second, Zamora contends that before an insurer (here, Ace) can make available excess UM coverage to an insured customer (Zamora), the named insured (Enterprise Holdings) must have an "insurable interest." As Zamora concedes, and the district court noted, Zamora has identified no legal authority for this proposition. Further, "[t]he majority of courts that have considered the issue of who may question the lack of an insurable interest hold that *only the insurer* can raise the objection of want of an insurable interest." *Couch on Insurance* 3d § 41:5, n. 1 (Dec. 2019 Update) (emphasis added). Here, it is Zamora—the insured customer—that raises the insurable-interest objection. Because Florida courts have not, to our knowledge, applied the insurable-interest doctrine offensively—that is, by the insured customer, against the insurer—we decline to do so here.

**B**

The second question is whether Ace made excess UM coverage available to Zamora. Zamora signed a rental agreement stating that

---

[2] Florida courts' interpretations of other portions of § 627.727 also cast doubt on Zamora's argument. The Supreme Court of Florida has concluded, with respect to § 627.727(9), that "a waiver executed by the named insured electing non-stacking UM coverage is binding on all insured[.]" *Travelers Commercial Ins. Co. v. Harrington*, 154 So. 3d 1106, 1114–15 (Fla. 2014).

"OWNER AND RENTER REJECT ANY ADDITIONAL UM/UIM COVERAGE TO THE EXTENT PERMITTED BY THE LAW."  This satisfied § 627.727(2) because Ace offered the insured customer, Zamora, the opportunity to either (1) accept the $100,000 in excess UM coverage by signing the rental agreement or (2) opt for higher excess UM coverage by rejecting the rental agreement.  Ace's offer was entirely compliant with the manner in which courts have interpreted § 627.727(2), which "require[s] an excess liability insurer at least to inform its insureds" of the option of acquiring excess UM coverage.  *State Farm Fire & Cas. Co. v. Walker*, No. 16-cv-14043, 2017 WL 962492, at *2 (S.D. Fla. Feb. 28, 2017), *subsequently aff'd*, 749 F. App'x 839 (11th Cir. 2018); *Tres v. Royal Surplus Lines Ins. Co.*, 705 So. 2d 643, 645 (Fla. 3d DCA 1998) ("[S]ection 627.727(2) . . . only requires an issuer of a non-primary policy to notify an applicant of the availability of UM coverage.").

Zamora's reliance on *Ferreiro v. Philadelphia Indem. Ins. Co*., 816 So.2d 140 (Fla. 3d DCA 2002), is misplaced.  In *Ferreiro*, the plaintiff purchased excess coverage when she rented a car, but her written policy specifically *excluded* excess UM coverage.  816 So.2d at 141.  Here, ACE's policy with Enterprise Holdings, and the terms incorporated by Zamora in the rental agreement, *included* excess UM coverage in the amount of $100,000.

6

Our decision is also consistent with *Nieves*.  In *Nieves*, the plaintiff made a claim for excess UM coverage after her husband was killed in an automobile accident while driving in his employer's vehicle.  49 So. 3d at 812.  The excess insurer had offered the employer excess UM coverage, subject to it purchasing a primary policy, but the employer declined to purchase a primary policy.  *Id.*  The court in *Nieves* held that the excess insurer had complied with § 627.727(2), stating that "the insurance company offered excess UM/UIM coverage to its insured, who simply elected not to accept it under the terms offered."  49 So. 3d at 814.  As in *Nieves*, here the excess insurer, Ace, offered excess UM coverage to the named insured, Enterprise; the named insured simply chose to purchase the lower limit of the policy.  Accordingly, Ace complied with § 627.727(2).

## II

For the foregoing reasons, we conclude that Ace complied with § 627.727(2) by making excess UM coverage available both to Enterprise Holdings and Zamora.  We affirm the judgment of the district court.

**AFFIRMED.**

7